TENNESSEE EASTERN ELECTRIC CO. v. ROBERT LINK, et al.

Eastern Section.    December 18, 1926.

No petition for Certiorari was filed.

1. **Eminent domain. Damages.** In determining the amount of damages caused by taking land under eminent domain the loss of a spring held properly included.

   In an action to take certain land under the eminent domain statute where defendant lost a spring which was valuable for drinking purposes and a milk house and also lost a mill site which, although not used for years, had a potential value, held that all these things were properly considered in determining defendant's damages.

2. **Appeal and error.** Where evidence is not properly excepted to, its admission cannot be urged as error on appeal.

   In an action to determine damages sustained by taking land by eminent domain where it was urged that evidence as to separate items of damages was received, held that the evidence was not excepted to at the time of the trial and could not be assigned as error.

3. **Eminent domain.** Where land is taken under eminent domain the owner is entitled to the full value thereof regardless of the fact that he may still be permitted to make some use of it.

Where plaintiff contended that defendant was not entitled to the full value of land taken by eminent domain because the land would not be overflowed all of the time and defendant might use it, held that regardless of this fact the defendant was entitled to the full value of the land.

4. **New trial. Jurors will not be allowed to impeach their verdict.**
Affidavits of jurors will not be received for the purpose of showing that the jury misunderstood the charge of the court, or that they failed to follow his charge, or that the verdict was rendered in a mistaken opinion as to the law or facts of the case.

5. **New trial. General talk of a jury will be considered as referring to a proper motive.**
Where it was shown that a juror made the statement: "The company has plenty of money, and lets give him good damages," held that the statement should be considered that the juror meant to give him the damages he was entitled to and was not made with an improper motive in view.

6. **New trial. A new trial will not be granted on the ground of newly discovered evidence unless it is shown that the evidence was recently discovered and proper diligence had been used.**
Before a new trial will be granted on the ground of newly discovered evidence, it must appear not only that the evidence has been discovered since the former trial, but also that it is such that, by the exercise of reasonable diligence on the part of the applicant, could not have been procured for the trial. If it could have been discovered before the trial by the exercise of reasonable diligence, a new trial will be denied.

7. **Eminent domain. Interest should be allowed in a judgment for damages in a case of eminent domain as of the date the judgment was rendered.**
Where interest was allowed as from the date that answer was filed by the defendant, held to be error and interest should be allowed only from the date judgment was rendered.

Appeal from Circuit Court, Greene County; Hon. D. A. Vines, Judge.

Modified and affirmed.

Susong, Susong & Parvin, of Greeneville, for appellant.

Shoun, Swingle & Milligan and J. E. Biddle, of Greeneville, for appellee.

SNODGRASS, J.   The petitioner, an electric power company, sought by the proceedings in this cause to acquire by condemnation 29.173 acres of land belonging to defendants, as it would be necessary to flood this acreage in raising its dam to the required height for the additional power desired for public usage. There was no question made as to the right of the company to so acquire the land for such purposes, upon proper compensation for the land taken and payment of the incidental damages resulting to the other lands of the defendants effected by the taking, but the controversy has arisen over the damages.

The original petition was filed in the circuit court on August 26, 1925, and on September 2, 1925 the defendants filed their answer, which did not controvert the right to take the lands, but emphasized the question of damages that would result to them in the taking. For

instance it was claimed that the twenty-nine and a fraction acres to be appropriated comprised practically all of the meadow land on a large and valuable farm of something over 300 acres, located about six miles from the town of Greeneville, and being on the waters of Richland Creek, a tributary of the Nolachuckey River, where the dam was to be raised to a height in which the backwaters would upon occasion flood the lands desired. It was thus made necessary and desirable that the company should acquire the twenty-nine and a fraction acres set out and described in the petition, which they asked for upon a fair valuation, being the only terms, of course, upon which they could acquire it.

A writ of inquiry was awarded by the court on September 2, 1925, and a jury of view was empanelled and sworn on September 8th. This jury it seems could not agree, and another jury was empanelled and sworn on September 22, 1925. This jury of view filed their report on the same day, fixing the actual damages for the taking at $7,920, and the incidental damages at $6,500, and stipulated that the petitioner should construct and maintain a bridge across Richland Creek at or near the ford that was being used by the defendants to reach and make available their lands across the creek. There was about sixty acres of the farm across the creek, and the flood waters would make the ford the only means of access to such isolated portion of the farm impassable.

The petitioner filed exceptions to the report of the jury and appealed therefrom to the circuit court, and on February 9, 1926, the cause was heard before the court and jury in the usual way, which jury reported and allowed in their verdict the sum of $8,700 as the actual value of the land taken, and $8,000 as incidental damages. Upon consideration of the motion for a new trial, which petitioner filed, a remittitur of $1500 of the incidental damages was suggested by the judge, and upon being accepted under protest the motion for a new trial was overruled. The lands sought was awarded to the petitioner and judgment was entered against it for the $8,700 actual damages, and the sum of $6,500 as incidental damages, together with interest from September 2, 1925, and all costs of the cause. Both sides excepted and appealed. Petitioner excepted to the overruling of the motion for a new trial and to the judgment and verdict of the jury fixing the amount of damages, and in allowing interest from September 2nd. The defendants never formally perfected any appeal, but are now acquiescing in the results. Petitioner perfected its appeal, and has assigned the following as errors:

"I. The court erred in refusing plaintiff a new trial on the ground that there was no evidence to support the verdict of the jury, and that the evidence preponderated against the verdict of the jury and that the verdict of the jury awarding damages for the lands taken

in the sum of $8,700, and incidental damages in the sum of $8,000 was excessive.''

"II. The court erred in permitting witnesses to testify over objection of the plaintiff as to the separate value of the spring, obstruction of the ford crossing, and the cutting off of the tract of land, as items of incidental damages—such separate valuation of these elements of incidental damages resulting in the excessive verdict.''

"III. The court erred in refusing to allow plaintiff to show that the lands lying between the 170 and 180 foot contour lines would still be open to cultivation by the defendants and that crops could be continuously produced on the lands to the extent of seventy-five per cent of its value.''

"IV. The court erred in not sustaining plaintiff's motion for a new trial on the ground that the jury had placed separate values on the elements of incidental damages, and had reached their verdict in violation of the instructions of the court and the law governing such matters.''

"V. The court erred in not sustaining plaintiff's motion for a new trial on the ground that the jury after it had retired and before it had returned its verdict heard and considered new evidence in the case which was prejudicial to the plaintiff.''

"VI. The court erred in making a remittitur of only $1500 from the verdict of the jury. After said remittitur the verdict of the jury was still excessive and not supported by the proof.''

"VII. The court erred in allowing interest from September 2, 1925, basing it on the fact that the order appointing the jury of view was issued on that date. Interest should have been allowed only from the date that plaintiff took possession of the property.''

"VIII. The court erred in not granting plaintiff a new trial on the ground of newly discovered evidence, that is, that since the trial of the case, plaintiff has discovered that the road in question and for the obstruction of which defendants were awarded damages in the sum of $2500, the cost of constructing a bridge, is a public road and not a private farm road owned by the defendants and for which they would be entitled to recover damages.''

We do not regard the actual damages placed upon the land as excessive. The acreage taken was practically all valuable meadow land, which would have produced from one to two tons of hay per acre. It was also capable of producing other valuable crops, such as corn and tobacco. There was a contention that large portions of it was boggy and swamp land, on which only wild grass of small value grew, but only a small portion was wet land, about an acre or less, and this was susceptible of being tiled. It was rich, level and fine land, adapted to and also used in the fall for grazing purposes after the grass was mowed, where cattle and other stock could graze until

Christmas. Mr. Maloney, one of the main witnesses for petitioner, employed as an appraiser of farm lands throughout East Tennessee, attempted to classify the land to be taken into three divisions. Fifteen acres of the land he valued at $250 per acre, ten acres at $200 per acre, and four acres at $100 per acre. He stated the four acres were swamp lands, the ten being partially swampy and boggy, and the fifteen he says being the better grade lying next to the house and along Richland Creek. The witnesses ranged in their opinions from this estimate to $500 per acre. A Mr. Easterley, a witness for the defendants, places the value on the land at $500 per acre, a Mr. Alexander at $400 per acre, and a Mr. Neas at $450 to $500 per acre. We think the weight of the testimony is, and as evidently believed by the jury, that only a very small portion of the twenty-nine and a fraction acres was unfit for cultivation. The jury have allowed about $300 per acre, and considering the character of this land, and the crops it would have and did produce, it cannot be said that their opinion is not reasonably supported.

Regarding the incidental damages as reduced by the court, we do not think it can be claimed to be so excessive as to evidence prejudice, passion or caprice. This was a very valuable farm, and upon the side next to the house and within 114 feet of the same was a large spring of excellent water, which furnished water for domestic purposes, and also a spring-house operated as a dairy adjunct for the storage of milk and butter. There was also a millsite which, though not used for years, was capable of being harnessed and put to uses, giving it a potential value entering into losses incident to the taking. It was insisted that upon the other side of the creek some — feet away there was another spring equally as good, which by the employment of a ram at an expense of not exceeding $500 would supply every loss incurred in the overflow of the spring upon the house side. We are not, however, very much impressed with this claim. The cooling effect of the spring as it comes from the earth can hardly be maintained by water transported in the summer time through pipes, even if the slight fall available in this case to make effective the power of a ram might be regarded as sufficient, which we doubt very much. Besides, it is practically conceded that the ram would have to be placed on that portion of the land taken, which would render its availability further questionable. This spring is within two feet of the 180 foot contour line and will doubtless at very high tide itself suffer injury. This 180 foot contour line is the outside estimate and description of the land sought to be acquired, and will have to be paid for at its fair cash value, notwithstanding there may be at times an area between that and the 170 foot contour line which may not be covered, and which by permission or fortuitous circumstances may be available for a limited use by the defendants.

Next there is the loss of access to the lands on the eastward side of the creek, hitherto enjoyed through the agency of the friendly ford, which offered no serious obstacle at any time to necessitous use, but which will not be hereafter as available because of the backwater that will occupy the passage to a depth destructive to its practical use. In regard to this it is insisted that there is a way, by a longer route, that might be used in case of necessity, but this route is not only longer and more inconvenient, but will pass over the lands of other parties at least for a short distance. This route, therefore, would depend upon too precarious a footing to be considered, as there is no law authorizing the condemnation of property for private use such as this. To continue to make available the lands on the eastward side of the creek a bridge would have to be constructed and maintained, and no one seems to have placed the expense of such a structure at less than $2500.

It is difficult indeed to estimate what the incidental damages to a large and valuable farm might be, shorn of its combinations as this has been and will be by the use and occupation of its only meadow lands. Availability, disruption and the loss of conveniences, take on an added significance when considered in connection with the wide possibilities which they served in a farm such as this. In cases of this kind the evidence is largely opinion, yet if the facts stated reasonably support the verdict of the jury, which is their opinion on such facts, we do not think their verdict should be disturbed, unless it is such from all the facts as to be clearly the result of passion, prejudice or caprice; otherwise it would be a substitution of the court's opinion for that of the jury in matters that the law has committed to their judgment. On the whole we are satisfied with the report of the jury and the action of the court reducing the incidental damages. Neither do we think there has been any such departure from the practice, or any misconduuct on the part of the jury that would justify our interference with the results of the trial.

The second assignment is, that the court permitted witnesses to testify over objections of the petitioner, as to the separate value of the spring, obstruction of the ford crossing and the cutting off of the tract of land as items of incidental damages, resulting in an excessive verdict. This assignment does not undertake to quote the substance of the evidence admitted, as required by the second paragraph of Rule 3, but in the brief supporting it the testimony of Mr. Maloney, at pages 72 and 73 was referred to, and it was stated that other witnesses were examined as to the separate value of incidental damages, and as sustaining which the record, pages 196 to 209 was referred to. These latter witnesses were such as were examined on the motion for a new trial, and their statements was not evidence admitted on the trial. Regarding the evidence of Mr. Maloney, when

examined it is found that he, having given his evidence in chief as to incidental damages, was being cross-examined by attorneys for the defendants as to the elements taken into consideration in arriving at his estimate. He had been asked by counsel for petitioner as follows:

"R. D. 10. I did not ask you about the incidental damages. You cannot fix a separate valuation on each of the items, but I asked you first, if you made an estimate of the incidental damages to the remaining part of the tract? A. Yes sir."

"R. D. 11. What items did you consider in making that estimate, without giving separate values as to each item? A. I considered the spring they are now using first, and next the damages to the ford crossing the creek into some lands they have east of the creek, next the water or power site, and fencing proposition."

"R. D. 12. I will ask you to state to the jury what the incidental damages, that being based upon the depreciation and market value of the remaining lands would be, how much did you estimate the incidental damages? A. From $3000 to $3500."

He was then asked to state if items named were not to be taken into consideration, if that would decrease his estimate, and he replied that it would. He was interrogated as to the installation of a ram, as follows:

"R. D. 16. Suppose it should develop he was not entitled to separate value for the spring taken, but is to be placed in the same relative condition with regard to water as he is now in, by having a ram built and water supplied to his house, would that decrease the amount of incidental damages in your opinion? A. If he had this other water put over there it would."

"R. D. 17. Suppose he is only entitled to the cost of putting in a ram into that upper spring, and running the water up to his house, and building a dairy and place to keep his milk and things there at his house; in other words, could that be done for a less amount than your estimate of the value of the spring down there? A. I think it could."

"R. D. 18. About how much would that decrease the amount of incidental damages? A. Both of these items?"

"R. D. 19. Yes. A. $500 to $800."

He was then asked as to other items of incidental damages, such as the loss of the ford being supplied by giving another right of way. He was asked if the amount he figured for the crossing was more or less than the value of the right of way of this 200 feet. He replied that he was trying to arrive at that by figuring what it would take to bridge the stream. Warned that he could not give a separate value, he then said he would reduce the damages the way he figured it, provided that road and right of way was furnished.

It was in response to this character of examination that the alleged objectionable cross-examination was made. When the witness was again submitted for a recross-examination, he was asked:

"R. X. 1. What value do you place upon the spring that was taken?

"Mr. Parvin: We object to that."

"The Court: I overrule the objection."

"Exception reserved."

"A. Which spring?"

"R. X. 2. The one taken."

"Mr. Parvin: In fixing the incidental damages separate values cannot be placed on the various articles, but it must be shown what the depreciation to the remaining land is on the market."

"The Court: He is right."

"R. X. 3. Not then going to the jury as a valuation, what would you say it was? A. $1000."

The citation shows no further objection to this testimony, thus limited in its purposes, and without reference to the question as to whether or not original proof of items of incidental damages may not be given as showing the depreciation, we think that as a cross-examination the questions were proper; but if not, was really unobjected to, as the evidence set out shows. This illustrates the value of the rule requiring the evidence to be substantially quoted in assigning error as to admission of testimony. The second assignment is therefore overruled.

There is no merit in the third assignment, and it is likewise overruled. With regard to this, it is proper to say that whatever advantage to the original owner that chance or circumstance of its not always being overflowed may throw in his way, occasion deprives him of ownership, and it is a condition precedent to its being taken that full value must be paid for it, without regard to any beneficial use that exigency might still preserve to him, being such by permission.

With respect to the necessity of paying for the land taken, there can be no difference in this case from that of the Kentucky-Tennessee Light & Power Co. v. Beard, 152 Tenn., 248, in which it was held that:

"Where an electric light & power company in condemnation proceedings acquired a permanent easement in a strip of land described in its petition, and in consent decree entered in the case, it became liable for value of that strip as if fee had been taken, in view of Constitution Article 1, sec. 21, and Thompson's-Shannon's Code, 1857."

The fourth assignment is not well taken, because even if the evidence referred to could be received, and if when it was received it established that the jurors separately valued the items of incidental

damages, which is denied, the evidence relied on to sustain this as-. signment is not before the court. In the first place the evidence was excluded on exception, and no assignment is made to the action of the court in this regard, which would bring it before us for consideration upon a determination that it was improperly excluded. In addition:

"Affidavits of jurors will not be received for the purpose of showing that the jury misunderstood the charge of the court, or that they failed to follow his charge, or that the verdict was rendered in a mistaken opinion as to the law or facts of the case." Wade v. Ordway, 1 Baxt., 229, 235; Richardson v. McLemore, 5 Baxt., 586-590; Roller v. Bachman, 5 Lea, 154-159-160; History of a Lawsuit, 5th Ed., p. 313-314; 7th Civ. App., 132, L. R. A., 1915B, 703 note.

The fifth assignment is to the effect that the alleged statement of the juror, J. M. Johnson, i. e., "the company has plenty of money and let's give him good damages," was unsworn testimony prejudicial to the petitioner, and was evidence of prejudice. There is no denial but what the defendants were entitled to some damages, and if the statements were made "lets give him good damages," they can mean nothing more than that the attitude of the jury was to give him all he was entitled to. This much was not evidence, and if the statement was made that "the company has plenty of money," it can be attributed only, under the circumstances of the case, to an opinion of the juror from such evidence as was before them, and would not, we think, under the circumstances of this case, be sufficient to set aside the verdict. At any rate the proof in relation thereto is not before us, having been excepted to and sustained, and no assignment having been based thereon.

The sixth assignment, as to the alleged excessiveness of the verdict, has already been disposed of.

The eighth assignment must suffer the same fate as the fifth, as it is based upon evidence which upon exception was excluded, and there is no assignment bringing the matter before us. However, from the statements in the brief, had it been before us, there was negligence in not discovering the evidence in time to have had it before the court as to the public character of the road which crossed the creek. In their answer filed September 2, 1925, notice was given of a claim for incidental damages by reason of the fact that they would be cut off from access to lands across the creek, and the case was tried on February 13, 1926. While Mr. Summers does state that he never had any knowledge that the road crossing the creek was a public road until after the trial, he yet knew that the road crossed the creek and made no investigation as to its character, notwithstanding he had been on the farm twenty-five or thirty times.

6 T. A.—40.

"Before a new trial will be granted on the ground of newly discovered evidence, it must appear not only that the evidence has been discovered since the former trial, but also that it is such that, by the exercise of reasonable diligence on the part of the applicant, could not have been procured for the trial. If it could have been discovered before the trial by the exercise of reasonable diligence a new trial will be denied." Tabler v. Conner, 1 Baxt., 195; Demonbreum v. Walker, 4 Baxt., 199; Railroad v. Jones, 100 Tenn., 502; Potter v. Coward, Meigs, 22.

This leaves only the seventh assignment of error, which is to the effect that the Chancellor was in error in allowing interest from a date earlier than the judgment of the court entered on February 13, 1926 awarding the land to petitioner. The Chancellor allowed interest from September 2, 1925, the date upon which the answer was filed. In this we think he was in error. It is insisted by the defendants that they filed an answer on September 2, 1925, which did not resist the right to take the land, and that a writ of inquiry was issued on that date by the clerk; and they insist that petitioner had the right to take the land on that date, from which it is claimed the landowners ceased to have any control over the property. But we do not think this is so. The landowner can resist the taking of possession until his damages are ascertained and paid or provided for by execution of a bond. Expressing a willingness to accept, but prosecuting the proceedings to ascertain the terms, is not a surrender either of the possession or the right thereto. The acquiescence in a right to appropriate is conditional upon the payment of damages. Section 1859 of Shannon's Code provides:

"If no objection is made to the report, it is confirmed by the court and the land decreed to petitioner upon the payment to defendants, or to the clerk for their use, of the damages assessed, with costs."

It is true that Section 1864 of the same code provides that "the taking of appeal does not suspend the operations of petitioner on the land, provided that such petitioner will give bond, with good security, to be approved by the clerk, in double the amount of the assessment of the jury of inquest, payable to defendants and conditioned to abide by and perform the final judgment in the premises." No such possession had deprived the defendants of the use of the land so taken up to the judgment of the court, nor was any bond given previously thereto. Therefore no basis is found for interest as compensation for the deprivation of its use. Petitioner might have withdrawn his application, and would have been liable only for cost; but when the judgment was entered in the case the first effective right to possession accrued, and this is the first establishment of the relation of debtor and creditor.

"Interest is the compensation which may be demanded by the lender from the borrower, or the creditor from the debtor for the use of money." Shannon's Code, section 3492.

"Interest is the consequence growing out of the use of money lent, or damages fixed by law for the non performance of certain contracts." Note 1 to said section, and authorities there cited.

"All damages for delay in the payment of money owing upon contract or provided for in the allowance of interest which is in the nature of damages for withholding money that is due, and is the only measure of all such damages." Note 3 to said section, and authorities there cited.

We think, therefore, the Chancellor should not have allowed interest as from a date when no obligation had attached. All assignments of error except as to the allowance of interest as of such date are overruled. The assignment relating to the interest is sustained, and the decree will be modified so as to allow interest only from the entry of the decree, February 13, 1926. In other respects it is affirmed. The costs of this court will be equally divided between the petitioner and defendants.

Portrum and Thompson, JJ., concur.