**STATE of Tennessee, Appellee,**

v.

**Ricky WARD, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 17, 1983.

Opinion on Petition to Rehear
May 23, 1983.

Permission to Appeal Denied by
Supreme Court Aug. 1, 1983.

William M. Leech, Jr., Atty. Gen., Steven A. Hart, Asst. Atty. Gen., Nashville, Jan Hicks, Asst. Dist. Atty. Gen., Clinton, for appellee.

John G. Maddox, Clinton, for appellant.

## OPINION

CORNELIUS, Judge.

■ Appellant Ricky Ward and his wife, Tammie Ward, were indicted for first degree murder and armed robbery. Ricky Ward was found guilty of first degree murder and petit larceny and was sentenced to respective prison terms of life and not less than three (3) nor more than five (5) years. Tammie Ward was found guilty of only petit larceny and was sentenced to serve not less than three (3) nor more than five (5) years in the state penitentiary. The trial court approved the jury's verdicts but modified the punishments imposed for the petit larceny convictions to not less than two (2) nor more than five (5) years in the penitentiary. Since the trial court did not state whether Ricky Ward's sentences would be served concurrently or consecutively, they shall be deemed to be concurrent. Rule 32(a), Tenn.R.Crim.P.

Much aggrieved by the judgment, Ricky Ward appeals to this Court and challenges a jury instruction defining first degree murder, the improper admission of hearsay testimony, and the sufficiency of the evidence. No appeal by Tammie Ward is now before this panel.

The trial testimony showed that Tammie Ward, who was separated from her husband at the time, arranged to meet with Johnny E. Bradford, the deceased, on the afternoon of April 12, 1981. The Wards had previously resided with Mr. Bradford and Tammie sought to collect from him her food stamps which had been mailed to the home which Bradford then shared with Charles and Virginia Patton.

When Tammie informed appellant of her intentions, Ricky expressed concern for his estranged wife's safety. Stating that Bradford had a reputation for making sexual advances toward women, appellant claimed that he would accompany his wife to visit the man who had once pulled a knife on her and threatened to rape her. Tammie insisted she was not in any jeopardy and eventually met with Bradford in the late afternoon. After purchasing a bottle of wine, Bradford drove Tammie Ward to his home where Charles and Virginia Patton were present.

Eventually, Tammie called Ms. Patton into the bedroom and informed her of Bradford's sexual propensities. She related the incident in which Bradford had threatened her with a knife and mentioned that her husband "told her that there wasn't nobody going to do nothing to her and get by with it and that they were going to do old man Bradford—going to do away with him. . . ." She stated that appellant was somewhere around the house and promised Ms. Patton that she would leave twenty dolalrs under her mattress for her.

After the women concluded their conversation, the Pattons left the house at Bradford's prompting and drove to a nearby food store. The deceased went into his bedroom, stripped to his undershirt, and called for Tammie. When Ms. Ward saw Bradford, she sat on the bed but told him she was not the type of individual who engaged in such extramarital activities. As Tammie began rubbing Bradford's stomach,

appellant emerged from a closet with a sawed-off baseball bat and hit the deceased three times on the head with it. The Wards then fled the scene and drove home.

When the Pattons returned from the store and discovered their beaten housemate, they phoned the police and an ambulance. Bradford was taken to the hospital where he died on May 10, 1981, from pneumonia resulting from semiconsciousness, a skull fracture, and a blood clot. Dr. Christopher Norwood, the neurosurgeon who treated Johnny Bradford, testified that had the deceased not received the severe blows on the head, he would not have developed pneumonia.

The police questioned Ricky and Tammie Ward on April 13, 1981. In statements given by appellant and his wife, the couple detailed an account of their activities which was similar to that given by the State's witnesses. Both co-defendants denied, however, that they had any intention or desire to kill Johnny Bradford. Rather, Ricky Ward claimed he sought only to protect his wife from the deceased's sexual advances. He stated further that he had continued to beat Bradford with the bat because the seventy-year-old man had risen up after the first blow as if to draw a gun.

Appellant testified that when he heard his wife had been unsuccessful in obtaining her food stamps from Bradford, he took forty dollars ($40.00) from the deceased's wallet, twenty dollars ($20.00) of which Tammie placed under the Pattons' mattress. As the couple drove home from the crime scene, appellant threw the wallet and bat into a nearby river.

In his first issue on appeal, Ricky Ward contends the trial court erred by including a complete statutory definition of first degree murder in its jury instructions. Appellant submits that he was prejudiced by the charge because the jury discussed felony-murder in its deliberations even though no evidence was presented at trial that the murder was committed in perpetration of the larceny.

In support of his position, appellant appended an affidavit to his motion for new trial. In the affidavit, juror John T. Chambers stated that several jurors had voted to acquit appellant of first degree murder before another juror convinced them that the felony-murder doctrine, as defined by the trial court, was applicable to this case.

The trial judge had charged:

COUNT ONE: MURDER IN THE FIRST DEGREE

Section 39–2401, Tennessee Code Annotated, provides as follows:

Murder—If any person of sound memory and discretion, unlawfully kill any reasonable creature in being, and under the peace of the state, with malice aforethought, either express or implied, such person shall be guilty of murder.

Section 39–2402, Tennessee Code Annotated, provides as follows:

Murder in the First Degree: (a) Every murder perpetrated by means of poison, lying in wait, or by any other kind of willful, deliberate, malicious, and premeditated killing or committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or the unlawful throwing, placing, or discharging of a destructive device or bomb, is murder in the first degree. (b) A person convicted of murder in the first degree shall be punished by death or by imprisonment for life.

No further mention of the felony-murder doctrine was made during the jury charge. The trial judge did not intend to have the jury apply the doctrine to this case. In fact, in reducing the armed robbery charge to petit larceny, the trial judge intimated that he believed the beating was administered to Bradford as punishment for his sexual advances, not in an attempt to render him unconscious and rob him. The inclusion in the charge of the reference to felony-murder was only an attempt to provide the jury with a complete definition of the offense for which appellant was indicted. As given, the instruction was a correct statement of Tennessee law.

The issue under consideration arose because the jurors misunderstood the trial judge's instruction. In *State v. Johnson*, 632 S.W.2d 542, 549 (Tenn.1982), however, the Tennessee Supreme Court held "that a juror can not impeach her verdict, and that a new trial will not be granted upon the affidavit of a juror that she misunderstood the instructions given the jury by the trial judge, provided the instructions were correct." Furthermore, Federal Rule of Evidence 606(b), referred to in *Montgomery v. State*, 556 S.W.2d 559, 561–562 (Tenn.Cr. App.1977), prohibits impeachment of a juror's verdict in a situation such as that presented in the case *sub judice*. Rule 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about what he would be precluded from testifying be received for these purposes.

Appellant argues that the present case falls within the exception listed in Rule 606(b) and that the jurors' discussion of felony-murder constituted "extraneous prejudicial information" and an improper "outside influence." In *Montgomery v. State*, supra at 562, this Court offered examples of the types of activities envisioned by the exception in F.R.E. 606(b). The Court wrote:

Examples of "extraneous prejudicial information" or "outside influence" would be the reading of prejudicial newspaper editorials by the jury during its deliberation, the imparting of prejudicial information to the jury by an officer having charge of it, or when a bailiff, who was a witness in the trial of the case is present in the jury room during the jury's deliberation.

The incorrect application of an otherwise valid jury instruction does not constitute the impropriety necessary to allow a juror to impeach his verdict by affidavit. The trial judge properly refused to consider the affidavit attached to the motion for new trial in this case. This issue has no merit.

In a second issue, appellant complains of the admission of alleged hearsay testimony offered by Virginia Patton. Ms. Patton was allowed to testify that Tammie Ward had told her that appellant had mentioned to Tammie that he would be around the deceased's home and "do away with" Johnny Bradford.

If the statement related by Ms. Patton had been offered to prove the truth of the matters asserted therein, that Ricky Ward would be at the Bradford residence and kill the victim, it would have been hearsay. *See* D. Paine, *Tennessee Law of Evidence*, § 47 (1974). The evidence was admitted, however, for the limited purpose of showing Tammie Ward's knowledge of the impending assault and her state of mind prior to that offense. The testimony was, therefore, properly admitted in the case against *Tammie* Ward.

The trial judge instructed the jurors that the evidence was not to be considered in the case against appellant. We must assume the jury followed the trial court's instructions. *State v. Barton*, 626 S.W.2d 296, 298 (Tenn.Cr.App.1981). This issue also has no merit.

In appellant's third and final issue, he alleges that the evidence at trial was insufficient to support his convictions. Specifically, he argues that no competent evidence was introduced from which the jury could find he had the premeditation necessary to be found guilty of first degree murder.

Premeditation is a question of fact for the jury to be determined from all the circumstances attendant the commission of the crime. *State v. Harrington,* 627 S.W.2d 345, 348 (Tenn.1981). Premeditation may be inferred from repeated shots or blows aimed at the victim. *Id.*

Ricky Ward concealed himself in a closet armed with a deadly weapon. When he emerged, he struck the victim in the head with a sawed-off baseball bat. When Johnny Bradford recovered slightly from the blow and began to get up from the bed, appellant struck him two more times, causing severe head injuries which resulted in Bradford's death.

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). Ample evidence was introduced at appellant's trial to justify a rational trier of fact in finding Ricky Ward guilty of first degree murder and petit larceny beyond a reasonable doubt. Rule 13(e), T.R.A.P.; *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). This issue has no merit.

Finding the three issues raised by appellant to be meritless, we affirm the judgment of the trial court.

## ORDER

After a thorough review, it is concluded that appellant's motion to rehear is essentially a reargument and is, therefore, denied.

TATUM and BYERS, JJ., concur.