# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

BARBARA CORNETT,       )
                                  )

     Plaintiff/Appellant,     )     Appeal No.
                                  )     01A01-9808-CV-00405

v.                           )
                                  )     Warren Circuit

DEERE & COMPANY,     )     No.  8344
GENERAL EQUIPMENT and   )
VERNON KEITH,        )
                                  )

     Defendants/Appellees.    )
                                  )

**FILED**

August 3, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## APPEAL FROM THE CIRCUIT COURT
## FOR WARREN COUNTY

### THE HONORABLE JOHN TURNBULL PRESIDING

HELEN LOFTIN CORNELL
3635 Woodmont Boulevard
Nashville, Tennessee 37215

CHARLES E. HARDIMAN, JR.
309 West Due West Avenue
Madison, Tennessee 37115

ATTORNEYS FOR PLAINTIFF/APPELLANT

SAMUEL L. FELKER
JOHN C. HAYWORTH
BASS, BERRY & SIMS PLC
2700 First American Center
Nashville, Tennessee 37238

ATTORNEYS FOR DEFENDANT/APPELLEES

**AFFIRMED AND REMANDED**

                                      PATRICIA J. COTTRELL, JUDGE

CONCUR:

CANTRELL, J.
CAIN, J.

# OPINION

This personal injury case arose when Plaintiff Barbara Cornett sustained injuries while operating a lawn mower manufactured by Defendant Deere & Company and sold by General Equipment and its owner Vernon Keith. Ms. Cornett sued, alleging negligence, breach of warranty, and strict liability. She also sought punitive damages. The first trial concluded with a directed verdict for the defendants at the conclusion of the evidence. The trial court, however, granted Ms. Cornett a new trial.[1] In the second trial, the court granted directed verdicts to Vernon Keith on all issues, to both General Equipment and Deere & Company on the issues of negligence and punitive damages and to General Equipment on the strict liability claim. The jury returned a defense verdict on the remaining breach of warranty and strict liability claims. Ms. Cornett appeals, alleging ten errors. We affirm.

Barbara Cornett injured her right arm and left knee in June 1993, when she drove her father's riding lawn mower off a three-foot embankment. According to the trial court, the parties stipulated that Ms. Cornett sustained injuries in the amount of $5,000.

The accident at issue occurred after the mower's third use as Ms. Cornett was attempting to turn left and run the mower parallel to a retaining wall. Its steering purportedly locked and the mower would not turn. Ms. Cornett maintained she had insufficient time to brake before the mower careened over the embankment because both the clutch and the brake had to be engaged before the mower would stop.

---

[1]The judge from the first trial recused himself after granting the motion for new trial.

For the second trial, Ms. Cornett retained three experts. They theorized that the metal in the mower's wheel stops was defective and the wheels bent outward, allowing the steering mechanism to lock in a fully steered position, causing Ms. Cornett's injury. Her experts also determined that (1) misassembly of the gasoline over-flow hose could permit it to entangle with the steering sector gear; (2) the plastic housing for the steering sector gear, steering rod, and gasoline over-flow hose, which they identified as the steering pedestal, was so weak, it could fracture, resulting in a loss of steering; and (3) the two-pedal braking system represented a design defect and an unreasonable danger. Prior to trial, the court limited these experts' testimony to the mower's wheel stops and excluded testimony concerning the steering pedestal or gasoline overflow hose.

During voir dire, several venirepersons admitted to knowing Vernon Keith. The trial court inquired whether their relationship with Keith was such that they would feel discomfort if they had to decide the lawsuit against him. Those that unequivocally answered in the affirmative were excused. The court permitted additional voir dire by counsel on those who were unsure.

At the close of the evidence, the trial court granted directed verdicts to all the defendants on the issues of negligence and punitive damages. General Equipment was also granted a directed verdict on the strict liability claim. The court directed verdicts for Vernon Keith on all issues. The jury found for the defendants on the remaining issues. After the verdict was announced, the foreman complimented the members of the jury and then stated, "due to the fact that the plaintiff failed to proof [sic] beyond a shadow of a doubt it was faulty equipment, we had to go the way we did."

I.

Ms. Cornett argues that the trial court erred in excluding her experts' testimony concerning defects on the mower other than the wheel stops. Appellees respond that the absence of any evidence supporting the other theories rendered them irrelevant.

Trial courts perform a gatekeeping function to guard the jury from considering as evidence speculation presented in the guise of legitimate scientifically based expert opinion. *McDaniel v. CSX Transp., Inc.,* 955 S.W.2d 259, 263 (Tenn. 1997), *cert. denied,* __U.S. __, 118 S.Ct. 2296, 141 L.Ed.2d 157 (1998). When an expert's opinion lacks a factual basis, it has no probative value and is therefore irrelevant and inadmissible. *See State v. Williams,* 657 S.W.2d 405, 412-413 (Tenn. 1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984). An expert's speculative testimony

> that a certain thing is possible is no evidence at all. His opinion that a certain thing is possible is no more valid than the jury's own speculation as to what is or is not possible . . . . The mere possibility of a causal relationship, without more, is insufficient.

*Kilpatrick v. Bryant,* 868 S.W.2d 594, 602 (Tenn. 1993) (quoting *Lindsey v. Miami Development Corp.,* 689 S.W.2d 856, 861-861 (Tenn. 1985)). The exclusion of expert testimony is reviewed for abuse of discretion. *See State v. Tizzard,* 897 S.W.2d 732, 748 (Tenn. Crim. App. 1994).

The excluded testimony at issue was as follows: (1) the over-flow hose may have interfered with the steering gears; (2) the steering pedestal could have fractured and interfered with the steering; and (3) the two-pedal braking system was unreasonably dangerous. Ms. Cornett has pointed to no evidence showing that the over-flow hose on the mower she used actually did interfere with the steering gears or that the steering pedestal actually fractured. Absent such

evidence, there was no factual basis for admitting the testimony, rendering it purely speculative. Ms. Cornett's own testimony that the accident occurred so quickly she never applied the brakes rendered irrelevant and inadmissible the testimony that the two-pedal braking system was unreasonably dangerous. In light of the total absence of proof that the mower at issue showed any signs of these defects and the undisputed evidence that no attempt to brake was made, we cannot say the trial court abused its discretion in excluding the testimony at issue. *Id.*

## II.

Ms. Cornett argues that the trial court erred in failing to excuse three jurors for cause. She claims the first had lived near Vernon Keith, the second played basketball with him, and the third had business dealings with him over the years. She asserts in her brief, "[a]lthough counsel for Plaintiff requested that these jurors be challenged for cause and removed from the jury, the Court refused to do so, and these persons comprised part of the June 8-10, 1998 jury in this case."

The record does not support Ms. Cornett's statement that all three jurors served on the jury and that she challenged them all for cause.[2] Only one of these three venirepersons, the individual who played basketball with Mr. Keith, Mr. Vinson, actually served as a juror. When asked if his relationship with Mr. Keith would impede his ability to act impartially, this juror stated, "I don't think so, but it might make me a little uncomfortable." He later stated he would try not to let

---

[2]The trial took place in McMinnville, Tennessee, a fairly small town where "everybody knows everybody else," according to the trial court. The court excused Mr. Keith's neighbor. Ms. Cornett used a peremptory challenge on the juror who had business dealings with Mr. Keith.

the relationship interfere if it was a close case, but added that he "did not know for sure." The trial court then allowed counsel to question the juror further.

Ms. Cornett never challenged this decision. Nor did she question the juror further regarding his relationship with Mr. Keith. *Compare Ricketts v. Carter*, 918 S.W.2d 419 (Tenn. 1996). Furthermore, Ms. Cornett failed to request the court to strike the juror for cause or peremptorily strike him herself. The issue is, therefore, waived. Tenn. R. App. P. 36 (a); *see State v. Lautenschlager*, No. 02C01-9702-CC-00051, 1998 WL 28048 at * 3 (Tenn. Crim. App. January 26, 1998) (Tenn. R. App. P. 11 application denied). "The right to challenge *propter defectum* [on account of an alleged legal disqualification] ends when the jurors are accepted and sworn. By waiver the juror becomes a legal juror." *Manning v. State*, 155 Tenn. 266, 272, 292 S.W. 451, 453-454 (1926).

### III.

Ms. Cornett argues that the trial court erred in failing to grant a change of venue, mistrial or new trial based the jury's familiarity with the parties. We disagree.

In all civil jury trials, "the venue may be changed, at any time before trial, upon good cause shown . . . ." Tenn. Code Ann. § 20-4-201 (1) (Supp. 1995). The party seeking a change of venue

> shall make a statement of facts, in writing, under oath or affirmation, that he verily believes that, owing to prejudice, or other causes, then existing, he cannot have a fair and impartial trial in the county, . . . where the cause is pending, the truth of which statement shall, in a court of record, be verified and supported by the oath of at least three (3), . . . respectable and disinterested persons.

Tenn. Code Ann. § 20-4-203 (1980). The denial of a motion for change of venue

is ordinarily reviewed for abuse of discretion. *See Tennessee Gas Transmission Co. v. Oakley*, 193 Tenn. 638, 642, 249 S.W.2d 880, 881 (1952).

Prior to trial, Ms. Cornett moved for a change of venue on the ground that Warren County was an inconvenient forum for her attorneys and witnesses and an impartial jury could not be obtained due to the venire's familiarity with Ms. Cornett, Mr. Keith, and General Equipment. As verifying and supporting witnesses, Ms. Cornett offered David Cornett, Carey Hambrick, one of Ms. Cornett's witnesses, and Ms. Cornett's two attorneys. After reviewing Appellees' response to the motion, Ms. Cornett provided additional witnesses.

We see no abuse of discretion here. The reasons underlying Ms. Cornett's motion for change of venue were insufficient to establish "good cause." We reject her contention that mere knowledge of a party's existence, without more, justifies a change of venue. Further, Ms. Cornett made no showing that the denial of this motion was prejudicial to her. *See Scott v. Jones Brothers Constr. Inc.*, 960 S.W.2d 589, 594 (Tenn. App. 1997) (both harm and error are required for reversal); Tenn. R. App. P. 36 (b).

In her brief, Ms. Cornett states, "In the present case, where all of the jurors knew Defendant Vernon Keith, many of them knowing him well , . . . venue should have been changed. . . ." The record refutes this statement. In fact, six prospective jurors knew him, but only one served as a juror. Voir dire questioning established that most of the jurors were not familiar with Ms. Cornett or the defendants, including Mr. Keith.

As to Ms. Cornett's argument concerning the newspaper articles, the record shows that during trial the local paper published an  article on Ms. Cornett's law suit. The trial court stated to the jury:

It's been brought to my attention there was a little article and [sic] contains some inaccuracies and whether it is accurate or not. The jury will be disregarding this if they consider any story in the newspaper. You don't try cases based upon newspaper stories or street talk. You will disregard the newspaper. That is not evidence and cannot be considered by the jury in making their determination of this case. The parties stipulated as a result of injuries that Ms. Cornett sustained in the amount of $5,000 and those bills necessary for her treatment and reasonable in that amount. That does not mean the defendant says they owe them. In fact, they say they do not because they are not at fault but they are stipulating those bills, is that correct?

Both counsel answered in the affirmative. The record shows that Ms. Cornett never requested that the court inquire whether any jurors had actually read the paper. She never objected to the trial court's handling of the matter. Nor did she renew her motion for change of venue or seek a mistrial. Her failure to take action to nullify the harmful effect of the error, if any, or otherwise raise this issue below, or to demonstrate prejudice, precludes reversal on this ground. Tenn. R. App. P. 36 (a); *see Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991) (issues not properly raised in the trial court cannot be asserted for the first time on appeal).

IV.

Ms. Cornett argues that the trial court erred by failing to substitute a juror or grant a mistrial when the jury foreman fell asleep numerous times during trial.

Having read and considered the record, we find nothing in the trial transcript showing that any of the jurors were sleeping. Nor is there proof that Ms. Cornett pointed out this alleged fact to the trial court, much less raised an objection or moved for a mistrial. Tenn.R.App.P. 36 (a). This record leaves us with nothing to review.

V.

Ms. Cornett contends that reversal is required because the trial court admitted into evidence over-sized enlargements of prejudicial photographs of an area near the accident site. She maintains that admission of the exhibits violated Tenn. R. Evid. 403.

Tennessee courts follow a policy of liberality in the admission of photographs at trial. *See State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). "The admissibility of photographs lies within the sound discretion of the trial court" after due consideration of the evidence's relevance, probative value and potential for unfair prejudice. *Id.;* Tenn. R. Evid. 403.

The photographs at issue accurately depicted the yard, although not necessarily the exact location, where Ms. Cornett was mowing when her injuries occurred. Defense counsel presented the photographs in an attempt to elicit Ms. Cornett's testimony on where in the yard her injury occurred. Ms. Cornett's inability to consistently identify the exact location of her spill left the issue unresolved, which persuades us that the photographs were not irrelevant. In light of her failure to specify or demonstrate how the photographs prejudiced her case, we cannot say the trial court abused its discretion by admitting them. *See Scott*, 960 S.W.2d at 594.

VI.

Ms. Cornett contends that the trial court erred in failing to instruct the jury to disregard references to her ownership of a Mercedes Benz raised on cross-examination. She asserts that the court agreed to instruct the jury to disregard the evidence but failed to do so.

Ms. Cornett's failure to assert or establish any prejudice arising from

the evidence is fatal to her argument. Tenn. R. App. P. 36 (b). Moreover, having reviewed the record, we believe the trial court's failure to give the instruction was inadvertent. The record reveals that Ms. Cornett did nothing to call this omission to the court's attention or otherwise prevent the alleged error. Relief is not required under these circumstances. Tenn. R. App. P. 36 (a); *See Barrett v. Raymond Corp.,* No. 59, 1991 WL 4996 at * 4 (Tenn. App. January 24, 1991) (no Tenn. R. App. P. 11 application filed).

## VII.

Ms. Cornett argues that the trial court erred in directing the verdicts for the defendants. Although she broadly frames the issue, Ms. Cornett limits her argument to the strict liability claim, asserting that issues of fact remained to be tried on whether the mower was defective or unreasonably dangerous. *See State v. McKay*, 680 S.W.2d 447, 454 (Tenn. 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1412, 84 L.Ed.2d 795 (1985) (when an appellant fails to articulate reasons to support a conclusory statement, the issue may be deemed waived). She maintains the issue of whether the metal used in fabricating the wheel stops was sufficiently strong was a jury question.

Tenn. Code Ann. § 29-28-106 (b) (1980) bars strict liability actions against sellers of

> a product which is alleged to contain a defective condition
> unreasonably dangerous to the buyer, user or consumer
> unless the seller is also the manufacturer of the product or the
> manufacturer of the part thereof claimed to be defective, or
> unless the manufacturer of the product or part in question
> shall not be subject to service of process in the state of
> Tennessee or service cannot be secured by the long-arm
> statutes of Tennessee or unless such manufacturer had been
> judicially declared insolvent.

The record shows that the trial court did not grant a directed verdict on

-10-

the strict liability claim against Deere & Company. As noted, the jury resolved that issue against Ms. Cornett. The record also reveals that Mr. Keith and General Equipment were merely sellers, not the manufacturers of the mower at issue, and Deere and Company, the manufacturer, was amenable to suit in this jurisdiction. Thus, the strict liability claim could not be maintained against the sellers, Mr. Keith and General Equipment. Tenn. Code Ann. § 29-28-106 (b). Accordingly, Ms. Cornett's argument lacks merit.

## VIII.

Ms. Cornett maintains that the verdict is contrary to the weight of the evidence. She argues that the evidence preponderated in her favor.

In effect, Ms. Cornett seeks a reweighing of the evidence. This we cannot do.

> It is the time honored rule in this State that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence or to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to disregard all to the contrary. Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury.

*Crabtree Masonry Co. v. C & R Const., Inc.,* 575 S.W.2d 4, 5 (Tenn. 1978); Tenn. R. App. P. 13 (d).

The jury specifically rejected Ms. Cornett's strict liability and breach of warranty claims. Under the circumstances of this case, those facts presuppose a finding, fatal to all the claims alleged, that the mower at issue was not defective or unreasonably dangerous. *See Broader v. Pedigree*, 541 S.W.2d 402, 404

(Tenn. 1976).

The evidence amply supports that finding. Ms. Cornett's experts testified that the accident was caused by weak wheel stops on the mower which bent outward, allowing the steering to lock in the fully-turned position. However, the mechanic who repaired the mower shortly after the accident testified that at that time the wheel stops were straight up in the proper position, the same as when they left the factory. He stated that he found nothing wrong with the mower's steering mechanism. This evidence, viewed in the light most favorable to the verdict, precludes reversal.

IX.

Ms. Cornett contends that the trial court erred in failing to grant a mistrial or set aside the verdict on the basis that the foreman, after announcing the verdict, stated, "due to the fact that the plaintiff failed to proof [sic] beyond a shadow of a doubt it was faulty equipment we had to go the way we did." She also claims reversal is required because the previously-mentioned newspaper article about the trial was published on the third day of trial.

The record shows that the jury was properly instructed on the standard of proof and was permitted to take the instructions into the jury room. It also shows that Ms. Cornett never responded to the foreman's comment. She made no objection and did not seek a mistrial. The record contains no evidence that an incorrect standard of proof was actually applied by the jury.

"Parties seeking a new trial because of alleged jury misconduct must, at the outset, satisfy the court that they have admissible evidence on the issue." *Caldararo v. Vanderbilt University*, 794 S.W.2d 738, 741 (Tenn. App. 1990); *see Patton v. Rose*, 892 S.W.2d 410, 413-414 (Tenn. App. 1994). Our

consideration of this question is controlled by Tenn. R. Evid. 606 (b). That rule

limits inquiry into the validity of a verdict as follows:

> Upon an inquiry into the validity of a verdict or an indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Tenn. R. Evid. 606 (b).

We reject Ms. Cornett's characterization of the foreman's comment as

"extraneous prejudicial information." Ordinarily, the issue of whether a jury has

misapplied the law is brought to the court's attention by juror affidavits or

testimony supporting a motion for new trial, rather than, as here, by post-verdict

juror comment. When raised in that context, our courts have consistently held

that "[t]he incorrect application of an otherwise valid jury instruction does not

constitute the impropriety necessary to allow a juror to impeach his verdict by

affidavit." *State v. Ward*, 663 S.W.2d 805, 808 (Tenn. Crim. App. 1983); *see*

*Goss v. Hutchins* 751 S.W.2d 821, 828 (Tenn. 1988); *Tennessee Eastern Electric*

*Co. v. Link*, 6 Tenn. App. 617, 625 (1926) .

> It is well settled law in this state that a juror can not impeach her verdict, and that a new trial can not be granted upon the affidavit of a juror that she misunderstood the instructions given the jury by the trial judge, provided the instructions were correct.

*State v. Johnson*, 632 S.W.2d 542, 549 (Tenn. 1982), *cert. denied,* 459 U.S. 882,

103 S.Ct. 183, 74 L.Ed.2d. 148) (1982). We believe this same reasoning applies where, as here, the jury was properly instructed and the issue of the jury's potential improper application of the law was verbally raised, if at all, by a lay juror's gratuitous comment shortly after the verdict was rendered. As noted previously, the evidence was more than sufficient to support the verdict under the proper standard of proof.[3]

Ms. Cornett contends that the previously-mentioned newspaper article published on the third day of trial constituted extraneous prejudicial information. In her brief she argues that "members of the jury were exposed to a newspaper article prejudicial to Plaintiff's case. . . ." The record, however, provides no evidence that any of the jurors were exposed to the article published on the third day of trial. *See Caldararo*, 794 S.W.2d at 742 (if found to be prejudicial, a juror's exposure to news items about the trial could warrant a new trial). Absent a such a showing, prejudice cannot be proved. Tenn. R. App. P. 36 (b). Ms. Cornett's characterization of the purported sleeping juror as extraneous prejudicial information within the meaning of Tenn. R. Evid. 606 (b) is simply inaccurate.

X.

Ms. Cornett argues that the trial court erred in twice sanctioning her counsel for failure to conduct hearings by telephone.[4] She claims the first

---

[3]To the extent that Ms. Cornett argues that the jury applied an incorrect standard of proof to reach the verdict, if the trial court had not been independently satisfied that the verdict was consistent with the evidence and the applicable law, it was authorized in its role as the thirteenth juror to grant a new trial. *Ridings v. Norfolk Southern Ry. Co.,* 894 S.W.2d 281, 288-289 (Tenn. App. 1994).

[4]Ms. Cornett filed a separate notice of appeal on this issue. The order appealed from had two filing dates. Defendant's moved to dismiss the appeal for failure to file a timely notice of appeal. Because the record contains no

occasion occurred during a March 1998 hearing on her motion for summary judgment and the second occurred during a post-trial hearing on discretionary costs.

The record belies Ms. Cornett's characterization of the reason for the sanctions arising from the summary judgment hearing. In a written order of March 20, 1998, the trial court assessed Ms. Cornett $400 in costs because her motion bordered on the frivolous. The order included no mention of a request for a hearing by telephone conference. The trial court's assessment did not constitute an abuse of discretion. *See Krug v. Krug*, 838 S.W.2d 197, 205 (Tenn. App. 1992).

The second sanction occurred in conjunction with the Defendants' motion for discretionary costs. In its order imposing a $500 sanction on Ms. Cornett's counsel, the trial court noted that she insisted that Defendants' motion be heard in open court, notwithstanding the fact that Defendants waived oral argument. Inasmuch as Ms. Cornett's counsel refused to permit a hearing by conference call, and in so doing required defense counsel to undertake an unnecessary out-of-town trip, we decline to find that the trial court abused its discretion.

To summarize, we affirm the judgment for the defendants in its totality. In light of this disposition, we need not reach Appellees' contention that the trial court erred in granting Ms. Cornett's motion for new trial after the initial trial. Appellees' motion to dismiss this appeal is denied. The case is remanded for

---

evidence of which date is valid, we deny the motion.

such further proceedings as may be necessary. Costs are taxed to Ms. Cornett for which execution may issue.

_____
PATRICIA J. COTTRELL, JUDGE

CONCUR:

_____
BEN H. CANTRELL, PRESIDING JUDGE (M.S.)

_____
WILLIAM B. CAIN, JUDGE