**Irene S. SCOTT, individually, and as surviving spouse of Floyd E. Scott, deceased Plaintiff/Appellee,**

v.

**JONES BROTHERS CONSTRUCTION, INC., Defendant/Appellant,**

**and**

**Roger D. Holland and Jose Arellanes, Defendants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

June 20, 1997.

Application for Permission to Appeal Denied by Supreme Court Jan. 5, 1998.

John D. Richardson, Memphis, for Plaintiff/Appellee.

Robert L.J. Spence, Jr., Peter J. Dauster, Memphis, for Defendant/Appellant.

## OPINION

LILLARD, Judge.

This case involves claims of negligence and wrongful death arising out of an accident at a highway construction site. The jury found the defendant construction company 70%

negligent and the decedent 30% negligent. The defendant appeals to this Court. We affirm.

In 1992, Defendant/Appellant Jones Brothers Construction, Inc. ("Jones Brothers") was performing a highway construction project for the State of Tennessee on a 9.2–mile stretch of Highway 412 between Jackson and Dyersburg. The speed limit along the length of the project was 55 miles per hour. At one point in this 9.2–mile stretch, Jones Brothers constructed a "haul road," metal plates placed across the highway that served as a crossing point for earthmoving vehicles called "scrapers." The scrapers carried loads of dirt from one side of the road to the other. There was a series of warning signs on either side of the crossing, and two flaggers were placed thirty feet from the crossing on either side to stop oncoming traffic when a scraper needed to cross the highway.

To stop or slow traffic, each flagger was given a sign on a pole approximately six feet tall. One side of the sign said "Stop,"and the other side said "Slow." When no scrapers were crossing the road, the flagger would stand with the "Slow" side facing oncoming traffic. When a scraper approached to cross the haul road, the flagger would turn the "Stop" side of the sign towards oncoming vehicles in order to halt traffic for the scraper to cross.

On the morning of August 26, 1992, Floyd and Irene Scott were traveling eastbound on Highway 412. They entered the 9.2–mile construction area. Signs within the 9.2–mile stretch warned approaching motorists of the upcoming haul road crossing. Roger Holland ("Holland") was driving a scraper. He moved from the side of the highway toward the haul road with a load of dirt, preparing to cross. Jose Arellanes ("Arellanes") was the flagger assigned to the side of the haul road facing eastbound traffic. Holland noticed the Scotts' vehicle as it approached the crossing, but he assumed it would stop and proceeded to cross the highway. The record contains conflicting testimony on whether Arellanes had turned the "Stop" sign towards the Scotts. The Scotts' vehicle did not slow down and collided with Holland's scraper. Both Floyd and Irene Scott were injured.

Irene Scott recovered, but Floyd Scott eventually died as a result of his injuries.

Irene Scott filed suit for her injuries and on behalf of her deceased husband. She sued Jones Brothers, Holland, and Arellanes for negligent design of the haul road and for specific acts of alleged negligence. A jury trial was held. At the end of the plaintiff's proof, Jones Brothers moved for a directed verdict. This motion was overruled. Jones Brothers put on no proof, and Scott nonsuited Holland and Arellanes. The jury found Jones Brothers 70% negligent and Floyd Scott 30% negligent. Irene Scott was awarded $225,000 for her injuries and $150,-000 on behalf of the decedent. The trial court then ordered judgment against Jones Brothers in the total amount of $262,500.

Jones Brothers moved the court for judgment notwithstanding the verdict or, in the alternative, for a new trial and for remittitur of damages awarded to Floyd Scott. The trial court denied the motion and specifically approved the verdict. Jones Brothers now appeals to this Court.

Jones Brothers argues several issues on appeal. Jones Brothers contends that Scott failed to present any evidence of negligence in the design and implementation of the haul road crossing or the manner in which the flagger carried out his duties. Jones Brothers also alleges error by the trial court in charging the jury regarding the pecuniary value of the life of decedent Floyd Scott, in the absence of testimony on such value. Jones Brothers also contends that the trial court erred in charging the jury on the applicability of the Manual of Uniform Traffic Control Devices ("MUTCD") and Tenn.Code Ann. § 55–8–149, arguing that their applicability was a question of law to be determined by the trial court. Finally, Jones Brothers alleges error in allowing the jury to view a videotape of the accident scene without the proper evidentiary foundation.

The jury's findings of fact will be set aside only if there is no material evidence to support the verdict. Tenn.R.App.P. 13(d). Appellate review of the denial of a motion for directed verdict or a JNOV in negligence cases is discussed in *Eaton v. McLain*, 891

S.W.2d 587 (Tenn.1994). In deciding whether to grant a directed verdict or a JNOV, the trial court must take the strongest legitimate view of the evidence in favor of the non-moving party and discard all countervailing evidence. *Id.* at 590. If any doubt exists as to the proper conclusions to be drawn from the evidence, the motion must be denied. *Id.* If both the plaintiff and the defendant engaged in negligent conduct that proximately caused the injuries, the trial court must determine whether reasonable minds could differ on whether the plaintiff's negligence was equal to or greater than that of the defendant. *Id.* If there is material evidence to support the finding that the defendant's negligence was greater than the plaintiff's negligence, we must affirm.

Jones Brothers argues first that there was no evidence of negligence in the design or implementation of the haul road crossing or in the actions of the flagger. However, the plaintiff presented evidence of negligence in failing to post a reduced speed limit well in advance of the haul road crossing. Bret Alsobrooks ("Alsobrooks"), the project supervisor, testified that the project was 9.2 miles long, that there was only one haul road crossing within the project, and that the speed limit was 55 m.p.h. throughout the entire length of the project. Signs were placed in various places before the haul road crossing, one of them warning motorists to be prepared to stop, but there were no signs reducing the speed limit in the approach to the crossing.

The plaintiff also presented evidence of negligence in the placement of the flaggers. Alsobrooks testified that the metal plates placed across the highway to create the haul road were twenty feet wide. Each flagger was placed thirty feet away from the plates on either side of the crossing. The flaggers were placed close to the crossing and to each other in part to facilitate communication between the two flaggers and between the flaggers and the scraper operators.

Alsobrooks testified on the provisions of the Manual of Uniform Traffic Control Devices ("MUTCD") regarding the placement of flaggers. It provides:

> Flaggers stations shall be located far enough in advance of the worksite so that approaching traffic will have sufficient distance to reduce speed before entering the project. This distance is related to approach speed and physical conditions at the site; however 200 to 300 feet is desirable. In urban areas when the speeds are low and streets closely spaced, the distance necessarily must be decreased.

Manual of Uniform Traffic Control Devices, § 6F–5. Stating that the MUTCD was only a "guide," Alsobrooks testified that placing the flaggers thirty feet from the crossing was preferable to the distance designated in the MUTCD, so that the flaggers could see each other and coordinate turning their "Stop/Slow" paddles, and so they could step into the haul road crossing to stop an approaching scraper if an emergency vehicle approached. Alsobrooks testified that using walkie talkies would not have been practical.

The plaintiff also presented evidence that Jones Brothers was aware that the design and implementation of the haul road crossing was insufficient to stop traffic. Arellanes, the flagger, testified that there had been other instances when approaching motorists had not slowed down.

Moreover, Holland, the scraper operator, testified that he saw the Scotts' car approaching, that it did not appear to slow down, and that he had time to stop the scraper, but that he assumed the Scotts' car would stop. Holland also testified that a hand signal could have been used to warn him not to enter the crossing but that no one used the signal.

■ It is apparent that there was material evidence from which the jury could have concluded that the warning signs approaching the haul road crossing were inadequate, that the failure to reduce the speed limit approaching the crossing was negligent, that the flaggers were placed too close to the crossing, and that the scraper could have stopped but failed to do so. Therefore, there was material evidence to support the jury's conclusion that Jones Brothers was negligent and that Jones Brothers' negligence exceeded the negligence of Floyd Scott.

■ Jones Brothers also alleges error in the trial court's jury instructions. The Tennessee Rules of Appellate Procedure provide:

> **(b) Effect of Error.** A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

Tenn.R.App.P. 36(b); *see Blackburn v. Murphy,* 737 S.W.2d 529, 533–34 (Tenn.1987). Therefore, regardless of alleged error, the verdict will not be set aside if "ample convincing evidence exists to sustain the verdict of [the] jury." *Blackburn,* 737 S.W.2d at 534.

■ Jones Brothers asserts that the trial court erred by charging the jury on the pecuniary value of Floyd Scott's life when no evidence was presented regarding that value. However, the $150,000 awarded by the jury was not designated as pecuniary damages, and the amount of the jury award is supportable by other damages incurred by Floyd Scott. Evidence was presented of his medical and funeral expenses, totaling almost $75,000. *See* Tenn.Code Ann. § 20–5–113 (1994); *Thrailkill v. Patterson,* 879 S.W.2d 836, 839–40 (Tenn.1994); *Wilkerson v. Altizer,* 845 S.W.2d 744, 749 (Tenn.App.1992). There was also considerable evidence of Mr. Scott's pain and suffering from his injuries and resulting complications from the date of the accident on August 26, 1992 until his death on September 14, 1992. Therefore, even if the trial court erred by charging the jury on the pecuniary value of Mr. Scott's life in the absence of such value, there is ample evidence to sustain the jury's $150,000 award on Mr. Scott's behalf.

■ Jones Brothers argues further that the trial court erred in charging the jury with deciding the applicability of the MUTCD and Tenn.Code Ann. § 55–8–149.[1] Jones Brothers contends that the applicability of the MUTCD and of any statute is a question of law to be determined by the court, not the jury. Jones Brothers does not, however, explain how it was harmed by the alleged error. In this case, the MUTCD clearly applies as a matter of law.[2] *See Gorman v. Earhart,* 876 S.W.2d 832, 836 (Tenn.1994). If the jury applied it, no harm was done. If the jury did not apply it, though, the only resulting harm would have occurred to Scott's case, not Jones Brothers', because the application of the MUTCD supports a finding that the flaggers should have been placed 200 to 300 feet in front of the haul road crossing, instead of the thirty feet actually used. Similarly, Tennessee Code Annotated § 55–8–149 appears to apply to stop signs at intersections, not to hand-held paddles being used at a construction site to slow or stop traffic. If the jury did not apply this statute, then no harm was done. However, even if the jury applied it, the statute requires motorists to stop at stop signs and would have supported Jones Brothers' argument that Floyd Scott was negligent in failing to heed the flagger's "stop" paddle. Any error in these jury instructions "more probably than not [did not affect] the judgment" of the jury and therefore does not require reversal of the jury verdict. Tenn.R.App.P. 36(b).

---

**1.** The statute provides:

(a) Every stop sign shall bear the word "Stop" in letters not less than eight inches (8") in height and such sign shall at nighttime be rendered luminous by steady or flashing internal illumination, or by a fixed floodlight projected on the face of the sign, or by efficient reflecting elements on the face of the sign.

(b) Every stop sign shall be erected as near as practicable to the nearest line of the crosswalk on the near side of the intersection or, if there is no crosswalk, then as close as practicable to the nearest line of the roadway.

(c) Every driver of a vehicle and every operator of a streetcar approaching a stop sign shall stop before entering the crosswalk on the near side of the intersection, or in the event there is no crosswalk, shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver or operator has a view of approaching traffic on the intersecting roadway before entering the intersection, except when directed to proceed by a police officer or traffic control signal.

(d) A violation of this section is a Class C misdemeanor.

Tenn.Code Ann. § 55–8–149 (1993).

**2.** Section 6A–5 of the MUTCD provides that "[a]ll traffic control devices used on street and highway construction, maintenance, utility or incident management operations shall conform to the applicable specifications of this Manual."

**594**

Finally, Jones Brothers contends that the trial court erred by allowing the jury to view a videotape of the accident scene without the proper foundation having been laid. Appellate review of the trial court's admission of evidence is limited. "Admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion." *Patton v. Rose,* 892 S.W.2d 410, 415 (Tenn.App.1994).

During the trial, Alsobrooks testified that there were several signs placed along the approach to the haul road crossing, one of them being a sign with a flagger symbol on it and another having the message "Bump Ahead 500 Feet." The order of the signs was an issue at trial because the "Bump Ahead 500 Feet" sign was larger than the flagger symbol sign and could have obscured the flagger symbol sign if placed in front of it. Alsobrooks testified that the flagger symbol sign was placed before the "Bump Ahead 500 Feet" sign. Scott used a videotape taken from inside a car approaching the accident scene in order to impeach Alsobrooks' statement regarding the order in which the signs appeared. The videotape was filmed on September 4, 1992. Alsobrooks testified that to his knowledge none of the signs had been moved before September 5. The videotape showed that the "Bump Ahead 500 Feet" sign preceded the flagger symbol sign. Jones Brothers argues that the proper foundation had not been laid and that the videotape was prejudicial.

At the trial, the videotape was used for a limited purpose, to impeach Alsobrooks. The trial court gave limiting instructions to the jury that the videotape did not necessarily show what a person would see when driving an automobile along the route and that it was shown only to establish the correct order of the signs. Moreover, "[t]he admission of improper evidence of a fact in issue is harmless where the verdict or judgment is supported by sufficient competent evidence." *Berke v. Chattanooga Bar Ass'n,* 58 Tenn. App. 636, 654, 436 S.W.2d 296, 304 (1968). As discussed above, the jury verdict is supported by material evidence. Viewing the evidence as a whole and given the limited use

of the tape and the court's instructions to the jury, we find no reversible error.

Affirmed. Costs on appeal are assessed against Appellant, for which execution may issue if necessary.

CRAWFORD, P.J., (W.S.), and HIGHERS, J., concur.