IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 4, 1999 Session

## PAMELA LYNN LEWIS v. ANDREW ROBERT FRANCES

**Appeal from the Chancery Court for Williamson County**
**No. 23448     Henry Denmark Bell, Chancellor**

———————————————

**No. M1998-00946-COA-R3-CV - Filed March 7, 2001**

———————————————

In this divorce case, Husband appeals from the trial court's decisions classifying, valuing, and dividing the parties' property incident to their divorce and asserts that he is entitled to an award much greater than the $250,000 granted to him by the trial court. Wife also appeals the trial court's classification and distribution of property, asserting that Husband was not entitled to any portion of her separate property and that there was no marital property. An additional issue was raised by a post-judgment ruling by a successor trial judge setting aside the order of the prior judge declaring the parties divorced. We affirm the divorce and reverse the award to Husband.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part, and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., and WILLIAM B. CAIN, JJ., joined.

Fred C. Dance, Nashville, Tennessee, for the appellant, Andrew Robert Frances.

Sawnie R. Aldredge, Nashville, Tennessee, for the appellee, Pamela Lynn Lewis.

### OPINION

Andrew Robert Frances ("Husband") and Pamela Lynn Lewis ("Wife") were married on July 25, 1993, and Wife filed a petition for divorce twenty-three months later, in June of 1995. The next three years were spent in discovery and other pretrial matters in this divorce litigation. At the time of the marriage, both worked in the music industry. Wife was a partner in Doyle-Lewis Management Inc., a firm which, at that time, managed one of the world's most successful recording artists. Husband operated a management company in California related to the recording industry.

When they entered into this short-lived marriage, both parties were mature people with established professional careers in the music industry. Both had accumulated assets, but Wife's success had enabled her to accumulate a substantial estate, primarily consisting of real property and

investment accounts. As valued in the record, the premarital value of those separate assets of Wife was almost fifty times greater than the value of the premarital assets of Husband. During the marriage, both parties maintained separate checking and investment accounts, filed separate tax returns, and never held any property jointly.

Husband asserts that the value of the marital estate subject to distribution is $7.1 million, the value at the time of the hearing of Wife's two major assets, her real property and her investment accounts. Through a series of separate arguments, Husband argues that Wife's investment accounts, in their entirety, as well as the real property, were converted to marital property and, alternatively, that any increase in the value of Wife's separate real property was marital property. Husband asserts that he should have been awarded half of the marital estate, or approximately $3.5 million. He includes none of his separately owned property, or its increase in value, in the marital estate.

Wife insists that there was no marital property and that her separate property remained separate. She also asserts that Husband did not make a substantial contribution to the preservation or appreciation of her separately owned property. Therefore, she argues, Husband was not entitled to any award of property. She does not seek any portion of Husband's income during the marriage or the increase in value of his separate property.

The trial court determined that the marital estate was the increase in Wife's net worth from the date of the marriage to the date Wife filed for divorce, and calculated that increase to be $1.4 million. The court awarded Husband $250,000 as an equitable distribution of the marital property, reasoning that an equal division of the increase in Wife's net worth during the marriage was inappropriate due to the marriage's short duration, Husband's lack of need, and Husband's failure to contribute to the marriage. As a basis for the award, the trial court acknowledged evidence that Husband was a good conversationalist, had been an asset at social gatherings among Wife's business associates, and had spent some time and energy on the renovation of Wife's real property.

The parties have focused their evidence and argument on the classification of the property at issue. Regardless of the size of the marital estate, however, the ultimate determination to be made in the distribution of marital property is whether the distribution is equitable. With considerations of equity in mind, and as a background for our examination of the parties' arguments, we must first review the facts of the parties' situation.

I.

Prior to her marriage, Wife acquired two tracts of real property. The first, the Music Row properties, consisted of five parcels, four of which Wife still owned at the time of the divorce. The second was a house and sixty-eight acres, the Harrison House, where the parties lived during their marriage. During the five months between Wife's purchase of these properties and the parties' marriage, substantial renovations were undertaken, all of which were paid for by Wife. While Husband testified that he assisted with these renovations, overseeing workers, writing checks (on Wife's accounts), etc., most of those efforts took place before the marriage because the parties wanted to move into the renovated house after the marriage.

At some point, apparently prior to the marriage, Husband and Wife formed a "boutique" record label, North/South Records Incorporated, which was funded by a major label, and paid Husband an annual salary of $100,000. Husband received a total of $150,000 in salary from this company. The office of North/South was in one of the Music Row properties. Also in that building was the office of Wife's company. Wife testified that she agreed to set up North/South in order to give Husband an opportunity for a career in Nashville. She also stated that the funding was available because of her reputation in the industry.

As discussed above, Wife's primary business activity was her part ownership of Doyle-Lewis, which managed a very successful entertainer. Doyle-Lewis's major asset was its right to receive management commissions from that artist, based upon record sales. Doyle-Lewis lost its management contract with its most successful client around mid-1994, and the business was dissolved. Litigation ensued, which was settled in October of 1996, resulting in a substantial payment to Wife. Wife started other business ventures related to the music industry.

North/South was apparently not a successful venture. During discovery in this divorce litigation, Wife learned of some activities by Husband related to his operation of North/South which caused her to question his business practices. Shortly after Wife filed for divorce, Husband, on behalf of North/South, sued the major record company which had provided the funding for North/South. Wife testified that she had asked Husband not to bring such a suit, and had been unaware that he had initiated the litigation until she was contacted during the discovery process in that lawsuit. Wife maintains that the litigation initiated by Husband had a negative effect on her position in, and eventual settlement of, the lawsuit resulting from the dissolution of her partnership. The North/South lawsuit was also eventually settled, but Husband was unable to document how the proceeds received by North/South (approximately $100,000) were distributed. Wife received none of that money.

Husband made few monetary contributions to the marriage. In fact, the record showed that the total amount of household expenses paid from Husband's checking account was $1,090. Wife provided everything else. Husband held $97,801 in investment accounts at the beginning of the marriage, and by early 1998, his holdings in those accounts had doubled.

With regard to Husband's non-monetary contributions to the marriage, the record shows that Husband maintained an apartment and business interests in California and spent a great deal of time there during the marriage. Wife testified that he was seldom in Nashville at their home during the six months preceding her filing of the petition for divorce. Husband once supervised the installation of a security gate and occasionally cut some weeds at Wife's residence. While the record showed that Husband signed some checks from Wife's accounts to cover improvements on her real property, the bulk of these improvements were done before the marriage. He admitted to smoking marijuana on the grounds of her residence and at her Music Row property where his offices were located, in spite of her request that he not do so. At one point in the marriage, Wife requested they attend marriage counseling. After attending three sessions, Husband refused to continue.

While Wife admitted that Husband's conversational skills had been an asset at social gatherings, particularly among their mutual acquaintances in the music business, she also testified that Husband's business decisions were detrimental to her interests. During the litigation Wife faced in relation to her business, Husband provided little emotional support. He did not even stay in the area.

At the time of the marriage, Wife possessed several investment accounts valued at $3,200,000. The greater part of the trial and, consequently, the record before us were devoted to tracing various deposits, payments, and transfers through Wife's separate accounts. In 1994, Wife hired a financial manager who consolidated her investment accounts into three new accounts. There is no real dispute that the purpose of the many exhibits and long testimony regarding the activity in these accounts was to demonstrate that Wife deposited her earnings during the marriage into these accounts and transferred money among them. The value of Wife's three investment accounts at the time of the hearing was $4,070,000.

Husband returned to California before Wife filed for divorce. The two parties had no further contact, except related to this litigation. Thus, although the divorce trial took place almost five years after the marriage, the parties separated after less than two years of marriage.

II.

Upon the dissolution of a marriage, courts are called upon to divide the assets the parties accumulated during the marriage. Such decisions are very fact specific, and many circumstances surrounding the property, the parties, and the marriage itself play a role. However, the law provides some general guidelines to use. The task involves several steps, the first being to determine whether an asset is subject to division at all.

Tennessee, being a "dual property" state, recognizes two distinct classes of property: (1) "marital property," as defined in Tenn. Code Ann. § 36-4-121(b)(1); and (2) "separate property," as defined in Tenn. Code. Ann. § 36-4-121(b)(2). *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). The distinction is important because, in an action for divorce, only marital property is divided between the parties. Tenn. Code Ann. § 36-4-121(a)(1); *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996). Separate property is not part of the marital estate subject to division. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Accordingly, when it comes to dividing a divorcing couple's property, the court should initially identify the separate property, if any, belonging to each party. *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998).

As a general statement, separate property is that which was owned by one party before the marriage or given to one party during the marriage. Tenn. Code Ann. § 36-4-121(b)(2). It includes (1) property owned by a spouse before marriage, (2) property acquired in exchange for property acquired before marriage, (3) income from and appreciation of property owned by a spouse before marriage, and (4) property acquired by a spouse at any time by gift, bequest, devise, or descent. Tenn. Code Ann. § 36-4-121(b)(2). Property acquired by one party during the marriage with that

-4-

party's separate premarital funds is considered separate property. Tenn. Code Ann. § 36-4-121(b)(2)(B) (separate property includes "property acquired in exchange for property acquired before the marriage"); *Wilson v. Moore*, 929 S.W.2d 367, 374 (Tenn. Ct. App. 1996). Likewise, income received from a party's separate assets remains separate property, as does any increase in value of separate property, unless each party substantially contributed to the preservation and appreciation of the property during the marriage. Tenn. Code Ann. § 36-4-121(b)(2)(C).

Generally, property that is acquired during the marriage by either or both spouses and still owned by either or both spouses when the divorce is granted is classified as marital property and is, thus, subject to equitable division. Tenn. Code Ann. § 36-4-121(b)(1). As stated above, income from separate property received during the marriage and appreciation in value during the marriage of separate property is properly classified as marital property "if each party substantially contributed to its preservation and appreciation." Tenn. Code Ann. § 36-4-121(b)(1)(B). Substantial contributions must be real and significant, but they need not be direct. *Mahaffey* v. *Mahaffey,* 775 S.W.2d 618, 623 (Tenn. Ct. App. 1989). Contributions are substantial if they enable the spouse who owned the property to retain it during the marriage. *Id.* Depending on the circumstances, the contribution of a spouse as homemaker, wage earner, parent, or family financial manager may be substantial, as well as other contributions the court may determine. Tenn. Code Ann. § 36-4-121(b)(1)(D).

Conduct between the parties can affect the classification of the property. For example, if either spouse makes a gift of separate property to the marital estate, the property is transmuted into marital property. *McClellan v. McClellan*, 873 S.W.2d 350, 351 (Tenn. Ct. App. 1993); *Batson*, 769 S.W.2d at 858. A presumption of transmutation arises when a party uses separate funds to purchase property but places the property in the names of both spouses. *Wright-Miller v. Miller*, 984 S.W.2d 936, 941 (Tenn. Ct. App. 1998); *Barnhill v. Barnhill*, 826 S.W.2d 443, 452 (Tenn. Ct. App. 1991). Transfer of title in previously separately owned property to joint ownership also creates a presumption of a gift to the marital estate. *Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. Ct. App. 1995). Either of these presumptions can be rebutted with "evidence of circumstances or communications clearly indicating an intent that the property remain separate." *McClellan*, 873 S.W.2d at 351; *Batson*, 769 S.W.2d at 858.

Similarly, either spouse can give his or her interest in marital property to the other spouse, making it separate property. *Mose v. Mose*, No. 01A01-9508-CH-00337, 1996 WL 76321 at *7. (Tenn. Ct. App. Feb. 23, 1996) (no Tenn. R. App. P. 11 application filed) (wife deposited her salary into separate savings account during marriage, and husband consented to her treating this account as her own, effecting a gift to wife). Courts will look to the intent and actions of the parties. *Id.*; *Wilson v. Moore*, 929 S.W.2d at 374 (a spouse cannot place marital property beyond the reach of the other spouse simply by depositing it in a separate account). In such situations, the determination of whether property is jointly or separately held depends upon the circumstances. *Langford v. Langford*, 421 S.W.2d 632, 634 (Tenn. 1967).

Whether an asset is separate property or marital property is a question of fact. *Cutsinger*, 917 S.W.2d at 241; *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992). Thus, a trial court's classification decisions are entitled to great weight on appeal. *Wilson v. Moore*, 929 S.W.2d at 372. These decisions will be presumed to be correct unless the evidence preponderates otherwise, *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983), or unless they are based on an error of law. *Mahaffey*, 775 S.W.2d at 622.

The trial court is charged with equitably dividing, distributing, or assigning the marital property in "proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). Thus, after the property is classified, the court is to make an equitable division of the marital property. The court is to consider several factors in its distribution, including the duration of the marriage, the contribution to and dissipation of the marital estate, the value of the separate property, and the estate of each party at the time of the marriage. Tenn. Code Ann. § 36-4-121(c) (listing the factors to be considered). The court may consider any other factors necessary in determining the equities between the parties, Tenn. Code Ann. § 36-4-121(c)(11), except that division of the marital property is to be made without regard to marital fault. Tenn. Code Ann. § 36-4-121(a)(1).

The court's distribution of property "is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson*, 769 S.W.2d at 859. An equitable distribution is not necessarily an equal one. *Word v. Word,* 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996). Thus, a division is not rendered inequitable simply because it is not precisely equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). Similarly, equity does not require that each party receive a share of every piece of marital property. *King v. King,* 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998); *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

The trial court's goal in a divorce case is to divide the marital property in an essentially equitable manner, and equity in such cases is dependent on the facts of each case. The fairness of a particular division of property between two divorcing parties is judged upon its final results. *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997).

Again, however, some general principles have been developed. Because dividing a marital estate is a process guided by considering all relevant factors, including those listed in Tenn. Code Ann. § 36-4-121(c), in light of the facts of a particular case, a trial court has a great deal of discretion concerning the manner in which it divides marital property. *Smith v. Smith*, 984 S.W.2d 606, 609 (Tenn. Ct. App. 1997); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987). Appellate courts ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c), or is not supported by a preponderance of the evidence. *Brown*, 913 S.W.2d at 168; *Wilson v. Moore*, 929 S.W.2d at 372.

III.

It is undisputed that Wife acquired the real property involved in this appeal, the Music Row properties and the Harrison House, prior to the marriage. Although she borrowed money to finance the acquisition this real property, her accounts contained sufficient funds to have enabled her to purchase the property without any financing. Wife paid for significant renovations to both properties, some of which occurred before the marriage and some during it. She paid off the indebtedness on the properties during the marriage. Husband made no financial contributions toward the acquisition or improvement of Wife's real property.

There is no question that the real property was Wife's separate property before the marriage. We think there is no real question that the real property remains Wife's separate property.[1] Husband claims that the increase in the net equity in the real property during the marriage is marital property. Essentially, he claims the entire current value of the properties as the net increase in equity, and values this equity at $3,067,000.[2]

The statutory definitions set out above provide that income from and appreciation of property owned by a spouse before marriage is separate property, unless each party substantially contributed to the preservation and appreciation of the property. Tenn. Code Ann. §§ 36-4-121(b)(2)(C) and (b)(1)(B). "Our courts have consistently interpreted the phrase 'any increase in value' as all inclusive." *Cohen*, 937 S.W.2d at 832 (citations omitted). This means increases in equity are viewed under the statute as increases in value. *Id.* at 833.

> The two prerequisites which must be met before a non-owner spouse may claim an interest in the increased equity on separate property are clearly set out in the statute. First, the increase in equity (i.e., the reduction in debt) must have occurred during the marriage. Second, the non-owner spouse must have made a substantial contribution to the increase, i.e., reduction.

*Id.*

Husband claims that he made substantial contributions to the preservation and appreciation of Wife's real property by: attempting to have a gate installed at the Harrison House, helping interview farm managers, cutting and burning weeds, "actually" going to the county clerk's office to get license plates for a farm truck, meeting with and supervising various people involved in the renovations, and writing and signing checks drawn on Wife's property account for various items

---

[1] Husband argues that the real property was converted from separate property of Wife to marital property on the basis of the theory of "commingling." He asserts that marital property, Wife's salary and Wife's investment accounts, which Husband claims became marital property due to commingling, were used to pay off the debts on the real property. Husband's argument must rest, however, on the related theory of transmutation. Since there is absolutely no evidence that Wife or the couple treated the real property in a way which would indicate an intention that it become marital property, Husband's argument that Wife's real property is marital property must fail. *Batson*, 769 S.W. 2d at 858.

[2] Husband asserts that the Harrison House had a net equity of $28,000 at the time of the marriage, and the Music Row properties had a negative net equity since their value was $400,000 and the indebtedness on them was $510,000.

related to the properties. The testimony indicates that most of Husband's activities related to the renovations occurred before the marriage. Wife disputes, through her own testimony and that of others, that Husband spent much time or effort related to improvements in her real property or that he ever had any responsibility over those improvements.

The trial court's findings on this issue are equivocal. In one part of its order, the trial court observed that Husband's counsel spent "an inordinate amount of time and effort on an unsuccessful attempt to prove that the value of wife's real estate had increased in value during the course of the marriage due in part to husband's contribution." However, the trial court later found that, "husband spent substantial time and energy in connection with improvement of wife's real estate." The trial court's comments at the close of the hearing do not help to clear up the confusion. The court stated:

> As to whether the husband, with respect to the real estate, made a substantial material contribution, I would say that it – "substantial," I don't think has to be very much – and so I think I probably would say he made some contribution, assuming that I find what I don't think I'm going to, and I – I know what the approximate value was, but I would say that – that it's not going to be a real element in this case because it's going to come out in the wash upon the equitable possessions that his contribution was not very much, not to say that it wasn't substantial.

To the extent the trial court's comments imply that the substantial contribution standard is less than "real and significant," we disagree. Tenn. Code Ann. § 36-4-121(b)(1)(B); *Mahaffey*, 775 S.W.2d at 623. We are unable to find that Husband has demonstrated that he made any real or significant contributions, directly or indirectly, to the increase in net equity in Wife's real property or that his actions allowed Wife to retain the property, increase its value through improvement, or increase its equity through debt reduction. Accordingly, we find that the increase in equity of Wife's separate real property is also her separate property and not marital property.

## IV.

Husband also maintains that all the money in Wife's investment accounts are marital assets, notwithstanding the fact that those accounts were set up and funded prior to the marriage. Because Wife made deposits into the accounts during the marriage from her income, which he claims as marital property, Husband contends that the "commingling" of assets transformed the separate accounts in their entirety into marital assets. Thus, he claims the $4,070,000 in the accounts as of the hearing date as marital property. These accounts were valued at $3,200,000 at the time of the marriage.

A great deal of time at trial, a great number of exhibits, and a large portion of Husband's brief were devoted to demonstrating that Wife moved money among the investment accounts and between the investment accounts and other accounts established solely in her name. The testimony and exhibits related to the deposits to, expenditures from and transfers among Wife's various accounts is complicated. She had numerous investment accounts, twelve at the time of the marriage and three after her financial manager consolidated them. In addition, she had a personal checking

-8-

account, accounts for her real property, and various accounts for her businesses. Husband demonstrated that Wife deposited most of her income from Doyle-Lewis into one or more of her accounts, checking or investment.[3] The record reflects that Wife transferred money from the various investment accounts to other accounts and eventually spent some of it for business purposes as well as for personal expenses.

Commingling occurs when a spouse's separate property is inextricably mingled with marital property or the other spouse's property. *Hofer v. Hofer,* No. 02A01-9510-CH-00210, 1997 WL 39503 at *3 (Tenn. Ct. App. Feb. 3, 1997) (no Tenn. R. App. P. 11 application filed). "If the separate property continues to be segregated or can be traced into its product, commingling does not occur." *Id.* (quoting 2 HOMER H. CLARK, JR., LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 16.2 at 185 (2d ed. 1987)); *Pope v. Pope*, No. 88-58-II, 1988 WL 74615 at *3 (Tenn. Ct. App. July 27, 1988) (no Tenn. R. App. P. 11 application filed).

The doctrine of commingling, like the related doctrine of transmutation, is based upon the rationale that:

> dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

2 CLARK, LAW OF DOMESTIC RELATIONS § 16.2 at 185.

In *Barnett v. Barnett*, No. 01A01-9706-CV-00244, 1998 WL 122717 (Tenn. Ct. App. Mar. 20, 1998) (no Tenn. R. App. P. 11 application filed), this court considered a commingling argument, stating:

> A somewhat similar situation was presented in *Mose v. Mose*, No. 01A01-9508-CH-00337, 1996 WL 76321 (Tenn. Ct. App. Feb. 23, 1996). In *Mose*, the Wife deposited her personal earnings into a separate savings account. The Husband "always agreed" throughout the marriage that "the income earned by the [w]ife was hers to use as she desired." During the divorce litigation, the Husband attempted to list the Wife's savings account, valued at $10,000, as a marital asset. This Court stated:
>
> > The $10,000 savings account should ordinarily be determined to be marital property since the Wife acquired this money during the marriage by saving her payroll checks while employed outside the

___

[3] Husband does not assert that he is entitled to some portion of any increase in the value of Wife's accounts during the marriage, eliminating the necessity of a more specific description of deposits and expenditures. We note that the increase in Wife's investment accounts during the marriage was $870,000.

> home. However, the Husband consented to her treating this account as her own property. This, in effect, was a gift from Husband to Wife. Thus, it was never the intention of either party that this account be jointly held.
>
> In the case at bar, the uncontroverted evidence indicates that both parties agreed before and during the marriage to segregate their assets. As noted by the trial court, both parties were savvy business people who had been married twice before. The evidence supports the trial court's finding that the parties' bank accounts, investment accounts, and retirement accounts were all funded by each of the parties' own separate earnings and by their express agreement. Therefore, the parties in effect granted gifts to each other. Consequently, the trial court did not err in declaring these accounts to be separate property.

*Barnett,*1998 WL 122717 at *3-4 (citations omitted).

Throughout their marriage, the parties herein deposited their separate earnings into separate accounts, none of which was jointly held. This conduct indicates an intent by each spouse to disclaim any interest in money earned by the other, or, an intent to gift the earning spouse with the other spouse's interest in income which would otherwise be marital. Husband did not have access to Wife's accounts. Wife did not make any claim on Husband's earnings during the marriage or expect Husband to contribute to her lifestyle. Husband appears to have shared the expectation that his earnings would remain his separate property to spend as he pleased. The parties treated their separate property and their income, whether from separately held investments or from employment efforts, as if there were an express agreement that they would hold that property and income separately.

There is no evidence in this record that the parties ever intended, or acted consistently with any intent, to give their premarital separate property to the marital estate. Husband does not even argue that such was the case. Instead, he contends that by the mere act of depositing her income into her separately held, previously-existing accounts, Wife made a gift to the marital estate of the total amount of money in her accounts. We decline to assign such intent to Wife in the face of her statements to the contrary and the overwhelming evidence of mutual conduct indicating the opposite intent. Accordingly, we find that Wife's investment accounts remained her separate property.

V.

We have concluded that all of Wife's assets in dispute before us were her separate property. Thus, they were not subject to distribution. Nonetheless, even if Husband were successful in his arguments that all Wife's assets were marital property, or even if the trial court were correct in holding that the increase in the value of Wife's real property was marital property, Husband would not necessarily be entitled to any specific portion, or any portion at all.

In equitably distributing marital property, courts are guided by a number of factors, including the duration of the marriage, the estate of each party at the time of the marriage, and the contributions of each spouse to the acquisition, preservation, appreciation or dissipation of the marital or separate property. Tenn. Code Ann. § 36-4-121(c). The court is specifically authorized to weigh "such other factors as are necessary to consider the equities between the parties." Tenn. Code Ann. § 36-4-121(c)(11).

The facts of this case place it squarely within the principles established in *Batson v. Batson*, that in marriages of short duration, "it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." *Batson*, 769 S.W.2d at 859 (citations omitted). In such marriages, an important factor to consider is each spouse's contribution to the accumulation of assets during the marriage. *Id.* The significance and value of a spouse's non-monetary contributions diminishes when the duration of a marriage is short and "claims by one spouse to another spouse's separate property are minimal at best." *Id.* These principles have been applied in a number of cases since *Batson*. *See, e.g., Barnhill*, 826 S.W.2d at 449 (especially in marriages of short duration, an equitable division of marital property need not be an equal one); *Derryberry v. Derryberry*, No. 03A01-9801-CV-00023, 1999 WL 486863 at *3 (Tenn. Ct. App. July 13, 1999) (no Tenn. R. App. P. 11 application filed) (in a divorce ending an almost seven year marriage of mature parties, it was equitable that both parties left the marriage with assets reasonably comparable to those with which they entered it); *Terry v. Terry*, No. E2000-00825-COA-R3-CV, 2000 WL 1349264 at *4 (Tenn. Ct. App. Sept. 20, 2000) (no Tenn. R. App. P. 11 application filed) (at the end of a short term marriage, husband was not entitled to share of increase in value of wife's separate accounts, where wife's premarital assets were greater, and husband did not contribute to the appreciation in value); *Stafford v. Stafford*, No. 01A01-9804-CV-00174, 1999 WL 79368 at *3 (Tenn. Ct. App. Feb. 19, 1999) (no Tenn. R. App. P. 11 application filed) (after a seven year marriage in which wife brought substantial assets into the marriage, but husband did not, a division which placed the parties in the same position as they would have been if the marriage had not taken place was equitable).

The evidence presented, including the marriage's short duration and Husband's failure to contribute to it, convinces us that no matter the size of the marital estate, if one existed, the property need not be divided equally and that the parties should, in large measure, be restored to their pre-marriage financial condition. *Batson*, 769 S.W.2d at 859. Even without an award of a share of any marital property, Husband's separate assets increased in value during the marriage by approximately $100,000. Although he earned an annual salary of $100,000 during the marriage, he contributed only approximately $1,000 to the couple's expenses.

Nothing in the record demonstrates that Husband made a contribution to the marriage close to the amount awarded him in the division of marital property. The couple's living expenses were paid for almost exclusively by Wife; Husband maintained his separate assets and interests in his business and apartment in California; Husband made little effort to preserve the marriage or to provide emotional support to Wife; and his actions were detrimental to Wife's business interests. In light of what the record shows Husband contributed, financially and otherwise, to the marriage and what he directly and indirectly took from the marriage, including his salary at North/South, a portion

of his living expenses, and a substantial increase in his assets, we find that an equal distribution of any marital property would be inequitable. Husband brought much less than Wife into this marriage of short duration, and contributed much less to the marriage than Wife. To grant him the windfall he seeks would be inequitable. To affirm the trial court's award to him of $250,000 would also, in our opinion, be inequitable.

While the increase in Husband's separately owned accounts has not been claimed by Wife as marital property, we recognize its award to Husband in examining the parties' post-marriage financial situation. Restoring the parties to their pre-marriage financial condition is best accomplished by awarding Wife all the property disputed as marital and awarding Husband only his separate property. Accordingly, the trial court's award to Husband of $250,000 as his equitable share of marital property is reversed.

## VI.

Wife contends that the trial court erred in refusing to admit a prenuptial agreement which she had not signed into evidence. The record shows that Wife intended to introduce the document to show the parties' intent to keep their property separate during the marriage. The trial court excluded the document on the ground that it constituted negotiations toward a settlement. In addition, Husband objected on the grounds that the copy offered did not include signatures of both parties and included notations the effect of which was not clear. Wife was apparently unable to authenticate the document and did not make an offer of proof.

Trial judges have broad discretion over the admissibility of evidence. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). The document's absence from the record precludes a close review of its relevance. Tenn. R. App. P. 13(c). Further, in her brief, Wife fails to specify how the exclusion of this nonbinding document harmed her case. The error, if any, is an inappropriate ground for reversal absent a showing that the issue was properly preserved and exclusion of the evidence harmed Wife. Tenn. R. App. P. 36(a)*; Scott v. Jones Bros. Constr., Inc.,* 960 S.W.2d 589, 594 (Tenn. Ct. App. 1997).

## VII.

The issues raised by the parties in this case were supplemented by an issue created by post-judgment rulings of a second, or successor, judge who *sua sponte* determined that the original court's grant of divorce was void. Some procedural background is necessary to an understanding of the issues raised. In Wife's original petition for divorce, she alleged as grounds irreconcilable differences and inappropriate marital conduct. Husband counter-claimed, seeking a divorce on the same grounds. Since the parties were unable to agree on distribution of property and execute a marital dissolution agreement, the irreconcilable differences allegations became irrelevant. Tenn. Code Ann. § 36-4-103(b).

At trial, the court permitted the parties to stipulate that they both would be granted a divorce without regard to fault pursuant to Tenn. Code Ann. § 36-4-129. The court specifically stated, "I

think you can stipulate that the divorce will be granted to both parties, period, under that statute." The trial court issued an order granting the divorce on June 5, 1998, prior to its order distributing the property. That order stated that the parties had announced in open court that they "stipulated to the need for the divorce" pursuant to Tenn. Code Ann. § 36-4-129. Based on this stipulation, the trial court granted the divorce to both parties "without a finding of fault."

Two months later, the original trial court entered its final order distributing the parties' property.[4] A few days later Husband filed a Notice of Appeal. After an unsuccessful motion to alter or amend, Wife also appealed the distribution of property. Neither party appealed the grant of divorce.

As a result of the retirement of the original trial judge, a new judge began presiding over the case. When Husband initiated garnishment proceedings in an effort to enforce the judgment, Wife moved for a stay of execution or enforcement of the judgment pending appeal, pursuant to Tenn. R. Civ. P. 62. The successor judge heard argument "to clarify the effect of the garnishment," and in an order entered later, *sua sponte* set aside the order granting divorce as void *ab initio* on its face. The court found that "at no time did the parties stipulate grounds for divorce or stipulate that either party committed fault in the marriage." It concluded that the only stipulation that had been made was a stipulation as to the need for a divorce. The court reasoned that Tennessee law required a finding of fault in all non-irreconcilable differences divorce cases and that the failure to find fault rendered ineffective the divorce granted earlier. Based on that finding, the judge determined that the order dividing the property was not final because it adjudicated fewer than all the parties' claims, in essence ruling that the judgment then on appeal was not appealable. The judge then quashed the garnishment, ordered the court clerk to file a supplemental record including his order, and in that order requested that this court consider the order as a post-judgment fact in determining whether the case should be remanded.

In denying the parties' joint motion to alter or amend its order, the trial court reaffirmed and further explained its prior ruling, found that it had jurisdiction to enter its order setting aside the divorce, and again requested that this court consider the order as a post-judgment fact or otherwise in its consideration of the appeal. Another supplemental record was filed.

Both parties contend that the new judge lacked jurisdiction to make a *sua sponte* determination of the validity of a final order that was the subject of an active appeal. We agree.

Generally, our courts abjure the notion that a case may be pending in more than one court at the same time. *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 596 (Tenn. 1994). In fact, our Supreme Court specifically "decline[d] to adopt a rule that would allow a case to be pending in more than one court at a time." *Id.* Thus, once a notice of appeal is filed, jurisdiction lies in the appellate court, and the trial court loses jurisdiction. *Id.; State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn.

---

[4] The August 3 order distributing the parties' property began with a statement that a decree of absolute divorce had been previously issued.

-13-

1996); *State v. Moore*, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991). Here, the trial court's jurisdiction to amend the final order ended when the notice of appeal was filed. "Once the trial court loses jurisdiction, it generally has no power to amend its judgment."[5] *Pendergrass*, 937 S.W.2d at 837. In *Spence*, this general rule was applied to a trial court's jurisdiction to hear even a Tenn. R. Civ. P. 60 motion, and the Court held, "a trial court has no jurisdiction to consider a Rule 60.02 motion during the pendency of an appeal." *Spence*, 883 S.W.2d at 596.[6] Because the trial court lacked jurisdiction, its December 18 order is void and lacks legal effect.

This court, however, has jurisdiction to consider issues created by the record in this appeal. Although the issue of the validity of the original trial court's grant of divorce was not raised by the parties herein, we think it prudent nonetheless to address that issue in the interest of finality between these litigants. Notwithstanding the successor judge's conclusion to the contrary, the original trial court's failure to assign fault between the parties did not deprive it of subject matter jurisdiction and render the divorce decree void *ab initio*. Our Supreme Court recently addressed the applicable standard for determining when judgments are void *ab initio*, holding:

> [W]here the court has general jurisdiction of the subject matter and jurisdiction over the parties, and where the court's decree of divorce is not "wholly outside of the pleadings," a divorce decree will not be deemed void. It follows that absent such a *prima facie* void decree, a flaw in procedure will not render a decree void.

*Gentry v. Gentry*, 924 S.W.2d 678, 681 (Tenn. 1996). Relying on a "most respected authority on chancery procedure," the Court observed that all chancery court "decrees are presumed to be valid." *Id.* at 680 (quoting WILLIAM H. INMAN, GIBSON'S SUITS IN CHANCERY § 228 at 220 (7th ed. 1988)). The Court further stated:

---

[5] We are unpersuaded by the trial court's reliance on Tenn. R. Civ. P. 54.02 and *Fox v. Fox*, 657 S.W.2d 747 (Tenn. 1983), as giving it authority to revise the June 5 order at any time. Apparently, the trial court deems the June 5 order to be interlocutory, since the original trial court did not state that it was final pursuant to Tenn. R. Civ. P. 54.02. However, the requirements of that rule deal with the appealability of an order which does not dispose of all the claims involved in a lawsuit. The June 5 order, granting the divorce, was not appealed. The August 3 order, distributing the property, was a final judgment which, together with the June 5 order, disposed of all issues in the case. That order was appealed, but neither party appealed the grant of divorce. As set out above, once a judgment is appealed, the trial court loses jurisdiction to amend, revise, or otherwise modify that judgment. Even if the June 5 order was interlocutory, the entire case was resolved by the August 3 order. Rule 54.02 cannot be read to give a trial court authority to revise an order after the judgment becomes final or is appealed.

[6] Thirty days after its entry, a trial court's judgment becomes final unless a timely notice of appeal or a specified post-trial motion is filed. *Pendergrass,* 937 S.W.2d at 837; Tenn. R. App. P. 4(b) (specifying certain post-trial motions trial courts may consider). After the judgment becomes final, Tenn. R. Civ. P. 60 governs the trial court's authority to grant relief from a judgment. No Rule 60 motion was filed herein, and the trial court would have had no jurisdiction to consider such a motion because the case was on appeal. *Star Truck & Trailer, Inc. v. Jim Hawk Truck Trailers, Inc.*, No. 02A01-611-CV-00267, 1997 WL 401954 at *10 (Tenn. Ct. App. July 17, 1997) (no Tenn. R. App. P. 11 application filed).

[T]his presumption is conclusive against collateral attack, unless it affirmatively appears on the face of the record itself: (1) that the Court had no general jurisdiction of the subject matter of the litigation; or (2) that the decree itself is wholly outside of the pleadings, and no binding consent thereto is shown in the record; or (3) that the Court had no jurisdiction of the party complaining, in person or by representation of interest; in which case it is void only as to such party or his privies. . . . A decree not *prima facie* void is valid and binding, until it is either (1) reversed by the Supreme Court, or by the Court of Appeals; or (2) is set aside on a complaint filed to impeach it.

*Id.*

Here, the original trial court clearly had jurisdiction over the subject matter of this action, a suit for divorce. The parties do not contest the trial court's jurisdiction over their persons. *See Dixie Sav. Stores, Inc. v. Turner*, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988) (objections to personal jurisdiction are waivable). Both appeared in person and by pleadings. Nor was the decree wholly outside the pleadings. On the contrary, it was the primary relief sought, and was agreed to by both parties. The order declaring the parties divorced was signed by counsel for both parties. Because personal and subject matter jurisdiction were extant and the decree of divorce was not wholly outside the pleadings, the decree was not *prima facie* void.

In *Gentry*, the Supreme Court held that absent a *prima facie* void decree, "a flaw in procedure will not render a decree void." *Gentry,* 924 S.W.2d at 681. The divorce decree under attack in *Gentry* was entered after a hearing held fewer than the statutorily mandated ninety (90) days after the filing of the complaint. Tenn. Code Ann. § 36-4-103(c). The Court characterized the failure to satisfy the waiting period as a mere procedural flaw which had no effect on the decree's validity. *Gentry,* 924 S.W.2d at 681.

We are of the opinion that any error which may appear in the phrasing used in the order declaring the parties divorced is, at most, a mere procedural flaw. The successor trial court's objection to the order arises from the original trial judge's use of the phrase "without a finding of fault."[7] Unlike the successor judge, however, we do not construe that phrase as indicating that no fault had been proved, by evidence at trial or by stipulation of the parties. Rather, we construe it to mean that the original trial court did not assess fault or apportion it between the parties.

Tenn. Code Ann. § 36-4-129 provides:

(a) In all actions for divorce from the bonds of matrimony or legal separation, the parties may stipulate as to grounds and/or defenses.

---

[7]Coupled with the original trial court's statement that the parties stipulated to the need for divorce, the successor judge was apparently convinced that no fault was proved or appropriately stipulated. We have the benefit of the record in this cause and, as set out above, are satisfied that sufficient evidence was admitted to support a finding of inappropriate marital conduct.

(b) The court may, upon stipulation to or proof of any ground for divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault, or if either or both parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone.

In *Varley v. Varley,* 934 S.W.2d 659, 665 (Tenn. Ct. App. 1996), this court held that Tenn. Code Ann. § 36-4-129(b) permitted the trial court to grant a divorce to the party who was less at fault or, if either or both parties are entitled to be divorced, declare the parties to be divorced, rather than awarding a divorce to either party alone. It found that "[a]lthough the statute allows for the awarding of the divorce to the party 'less at fault,' there is certainly no requirement of a written finding by the trial court that both parties were at fault or which party was less at fault." *Varley*, 934 S.W.2d at 665.

In this case, the trial court heard evidence sufficient to prove that Husband had been guilty of inappropriate marital conduct. Due to the stipulation, the trial primarily focused on the division of marital property. However, evidence of the cause of the parties' marital difficulties was admitted at the hearing where relevant to issues of each party's contribution to the marriage. Wife testified that Husband's prolonged absences and marijuana addiction damaged the marriage. She claimed that Husband smoked so much marijuana that it affected his memory and damaged his ability to communicate. Without reciting all the shortcomings testified to, we observe that Wife also testified that Husband refused to fully participate in marriage counseling, and that his conduct damaged her business relationships. Thus, prior to its entry of the order granting the divorce, the original trial court had heard evidence sufficient to support a finding of inappropriate marital conduct.

In addition, at the time of the hearing, the parties had no minor children and had lived apart for more than two years, providing grounds under Tenn. Code Ann. § 36-4-101(15), which does not require a determination of which party was at fault.

The statute clearly allows a court to simply declare the parties divorced rather than award the divorce to one party and removes any requirement that the court determine and assign relative fault. While the statute makes such a declaration dependent upon the entitlement of either or both parties to a divorce, it allows that entitlement to be demonstrated through proof or stipulation. Here, both parties alleged fault grounds, inappropriate marital conduct, and we would be reluctant to determine that the words used by the parties to express their stipulation that such grounds existed were not legally sufficient since neither party has contested the declaration of divorce and the statute provides no further guidance. *Mackie v. Mackie*, No. 01A01-9810-CV-00536, 1999 WL 675134 at *2 (Tenn. Ct. App. Sept. 1, 1999) (no Tenn. R. App. P. 11 application filed) (wife unsuccessfully argued the stipulation did not "rise to the level of dignity envisioned by the statute"). In any event, the trial court heard enough evidence to determine that the parties had grounds for divorce.

VIII.

To summarize, we reverse the trial court's order setting aside the divorce decree and its finding that all the issues were not adjudicated in this case. We reverse the award to Husband of $250,000 as his share of marital property, because the evidence preponderates against the trial court's finding that there was a marital estate of $1.7 million, and find that Husband failed to demonstrate Wife's assets or their increase in value were marital property. In addition, we find it would be inequitable to award Husband any share of a marital estate even if the increase in the value of Wife's property value was determined to be marital property. This case is remanded for any further proceedings necessary and consistent with this opinion. The costs of this appeal shall be taxed against Husband, for which execution may issue if necessary.

_____

PATRICIA J. COTTRELL, JUDGE